Filed 10/25/17

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION 4

| | |
|---|---|
| THE PEOPLE,<br><br>　　　　Plaintiff and Respondent,<br><br>v.<br><br>RUSSELL DEAN BUELL,<br><br>　　　　Defendant and Appellant. | A144046<br><br>(Marin County<br>Super. Ct. No. SC189594A) |

Appellant Russell Dean Buell appeals from revocation of his mandatory supervision following a felony conviction for driving under the influence of alcohol. As a condition of mandatory supervision, Buell was prohibited from drinking alcohol and was required to wear an alcohol monitoring ankle bracelet provided and monitored by a private company. When that company issued a report indicating Buell had consumed alcohol, the People petitioned the trial court to revoke Buell's mandatory supervision. At the hearing on the petition, the prosecution offered the testimony of Buell's probation department case manager, who testified based on the data and conclusion from the monitoring company's report. The trial court revoked Buell's mandatory supervision and sentenced him to serve the rest of his term in county jail. On appeal, Buell argues the trial court's order is not supported by substantial evidence and his counsel was ineffective in failing to object to his case manager's testimony and the company's report under *People v. Kelly* (1976) 17 Cal.3d 24 (*Kelly*). For the reasons that follow, we affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

On September 2, 2014, Buell pled guilty to felony driving with a blood alcohol level of .08 percent or higher in violation of Vehicle Code section 23152, subdivision (b), and admitted three prior convictions for driving under the influence. (See *id*., § 23550,

1

subd. (a).)  The trial court sentenced Buell to the mitigated term of 16 months in county jail.  Ten months were to be served in actual custody; six months were suspended and Buell was placed on mandatory supervision, subject to various terms and conditions, including that he consume no alcohol.

On November 20, 2014, Buell began mandatory supervision, and the Marin County Probation Department enrolled him in its Continuous Alcohol Monitoring Program.  The program required Buell to wear an alcohol monitoring ankle bracelet provided and monitored by Alcohol Monitoring System (AMS), a private company.

On December 10, 2014, the probation officer petitioned the trial court to revoke appellant's mandatory supervision on the grounds that his alcohol monitor indicated he had consumed alcohol on December 7 and 8, 2014, less than three weeks into his supervision.

A hearing on the petition was held on December 24, 2014.  The prosecution's only witness was Shelley Mays, the lead case manager for the Marin County Probation Department who worked with the Continuous Alcohol Monitoring Program.  Mays had received 10 weeks of training, 75 to 80 percent of which was devoted to the functioning of continuous alcohol monitoring devices.  Mays testified that clients in the Continuous Alcohol Monitoring Program wear a bracelet attached to the ankle and pressed tightly against the skin.  If the client consumes alcohol or attempts to tamper with the bracelet, the bracelet electronically notifies AMS.  AMS provides Mays with a daily report of potential violations for all of Mays's clients.  AMS will then analyze the report and will typically either confirm or otherwise resolve a report of a potential violation within 24 hours.  When a client consumes alcohol, Mays testified, the bracelet measures changes from the client's baseline alcohol level as the level rises to the point of highest consumption and then goes back down. If the client tampers with the bracelet, the temperature gauge will measure the difference in the body temperature and the "IR" frequency will detect any difference in the distance between the bracelet and the skin.

Mays testified that a continuous alcohol monitoring bracelet was placed on Buell on November 20, 2014.  On December 8, 2014, Mays received a potential alert for

2

alcohol consumption and tampering from Buell's bracelet, and AMS confirmed that alert as a violation the next day.

The prosecution introduced a "client noncompliance report" for Buell prepared by AMS. The report includes a graph measuring "TAC," "Temperature," and "IRDistance" for a 24-hour period beginning at 12:00 p.m. on December 7, 2014.[1] The report indicates, and Mays testified that the graph shows, a "confirmed consumption with tamper" beginning at 9:44 p.m. on December 7 and ending at 5:50 a.m. on December 8, 2014. The report concludes the "[a]lert has been determined to be a confirmed violation."

On cross-examination, Mays was shown a preliminary report reflecting the same measurements as in the noncompliance report, but over a longer time frame, from November 26, 2014 until December 9, 2014. The report indicates several "spikes" in the "TAC" level on specified dates leading up to December 9, 2014. When asked whether these spikes indicated alcohol consumption, Mays testified that she could not "answer that definitively" and could "only testify to what AMS has confirmed as a consumption." When asked how AMS analyzes the data to determine whether particular events indicate alcohol consumption, Mays answered: "However they do it on their equipment. I don't know the science behind it." On redirect examination, Mays testified the spike on December 8, 2014 was "significantly higher than any other spikes indicated on the graph" and there was "also a tamper in conjunction with it," which "usually will indicate a consumption event."

After Mays's testimony concluded, the People rested. Buell presented no evidence. The trial court then found that Buell had consumed alcohol and tampered with his alcohol monitoring bracelet, and thereby violated the terms and conditions of his mandatory supervision. The trial court terminated Buell's mandatory supervision and

---

[1] Mays testified that the "TAC" measures alcohol level and "IRDistance" essentially "measures the distance between the metal and the skin."

3

ordered him to serve the balance of his sentence in custody, a period of 161 days. Buell appeals.

## DISCUSSION

### I. Standard of Review

A trial court may revoke mandatory supervision when it has reason to believe the person under supervision has committed another offense or otherwise has violated the terms of supervision. (Pen. Code, § 1203.2, subd. (a).) The prosecution must prove the grounds for revocation by a preponderance of the evidence. (*People v. Rodriguez* (1990) 51 Cal.3d 437, 447.) We consider "whether, upon review of the entire record, there is substantial evidence of solid value, contradicted or uncontradicted, which will support the trial court's decision." (*People v. Kurey* (2001) 88 Cal.App.4th 840, 848.) Substantial evidence is evidence that is reasonable, credible, and of solid value. (*Minnegren v. Nozar* (2016) 4 Cal.App.5th 500, 507.) We "give great deference to the trial court and resolve all inferences and intendments in favor of the judgment. Similarly, all conflicting evidence will be resolved in favor of the decision." (*People v. Kurey*, at pp. 848–849.)

### II. Buell's Appeal Is Not Moot

The People first argue that Buell's challenge to his probation revocation is moot because Buell already has served the sentence imposed by the trial court and has been released from custody. Buell concedes he has completed his sentence, but argues his appeal is not moot because the probation violation is part of his permanent record and a successful appeal would clear his record and remove the " 'stigma of criminality.' " (*People v. Nolan* (2002) 95 Cal.App.4th 1210, 1213 (*Nolan*).) In *Nolan*, the defendant appealed a judgment finding she violated her probation and sentencing her to 120 days in jail, and the People argued her appeal was moot because her jail term had been completed. (*Id.* at pp. 1212–1213.) The court rejected the argument, finding that, because the probation violation was part of the defendant's permanent record, the appeal afforded her the "opportunity to erase the 'stigma of criminality.' " (*Id.* at p. 1213,

4

quoting *In re Dana J.* (1972) 26 Cal.App.3d 768, 771.)  We will follow *Nolan* and consider Buell's arguments on the merits.

### III. *Substantial Evidence Supports the Trial Court's Order*

Buell first argues that the trial court's decision to revoke his mandatory supervision was not supported by substantial evidence because:  (1) AMS did not treat several smaller spikes in Buell's transdermal alcohol concentration (TAC) measurements as alcohol consumption events; and (2) AMS's conclusion that he consumed alcohol was uncorroborated hearsay which did not constitute substantial evidence.

We do not agree that AMS's treatment of the smaller spikes means the trial court's conclusion was unsupported by substantial evidence.  As Mays testified, and as the AMS graph in evidence reflects, the alcohol level spike on December 8, 2014 was significantly larger—two and one-half times higher—than the other spikes reflected on the graph. Mays also testified it was not possible to have a false reading of alcohol consumption, but the smaller spikes could indicate an "interferent" or "atmospheric alcohol" in the form of cologne, mouthwash, or cleaning products.  (See *People v. Dorcent* (N.Y. Crim. Ct. 2010) 909 N.Y.S.2d 618, 624–625 [studies show TAC devices such as the device used here generally do not register false positives]; *State v. Lemler* (S.D. 2009) 774 N.W.2d 272, 276 [interferants such as consumable and non-consumable alcohols and some chemicals produce a TAC curve that differs from an alcohol consumption curve].)  She also testified the spike on December 8, 2014 was not consistent with an interferent because it was "significantly higher than the baseline" and coincided with a "tamper" event, which further suggested that Buell had consumed alcohol.  We find that this testimony, which comports with the data reflected on the AMS report, constitutes substantial evidence in support of the trial court's conclusion that Buell consumed alcohol.

Buell's second argument is that the conclusion in AMS's report that Buell had consumed alcohol was uncorroborated hearsay that does not constitute substantial evidence.

5

The revocation of parole (or mandatory supervision) is not part of a criminal prosecution and, therefore, the full panoply of Sixth Amendment rights available in criminal trials do not apply to parole (or supervision) revocation hearings. (*Morrissey v. Brewer* (1972) 408 U.S. 471, 480.) Hearsay that bears a substantial guarantee of trustworthiness is admissible in probation revocation proceedings. (*People v. Maki* (1985) 39 Cal.3d 707, 715, 716–717 (*Maki*); *People v. Gomez* (2010) 181 Cal.App.4th 1028, 1034, 1039; *People v. Brown* (1989) 215 Cal.App.3d 452, 454 (*Brown*).) "In general, the court will find hearsay evidence trustworthy when there are sufficient 'indicia of reliability.' " (*Brown*, at p. 454, quoting *United States v. Penn* (11th Cir. 1983) 721 F.2d 762, 765.) The court, however, may not rely on unsubstantiated or unreliable evidence. (*Maki*, at p. 715.)

The determination whether hearsay evidence is trustworthy rests with the trial court and will not be disturbed on appeal absent an abuse of discretion. (*Brown*, *supra*, 215 Cal.App.3d at p. 454–455.)

The trial court could rely on the conclusions in AMS's report if it found the report and the circumstances under which it was prepared trustworthy. As noted, the Marin County Probation Office contracted with AMS to supply and monitor the continuous alcohol monitoring bracelets used in their program. AMS generated the consumption and tampering report admitted in this case as part of its regular course of business and pursuant to its agreement with the probation office. (*Brown*, *supra*, 215 Cal.App.3d at p. 455.) Buell presented no evidence tending to contradict the accuracy of the report.

Moreover, AMS's conclusion that Buell had consumed alcohol was corroborated at the hearing. The data reflected in the graph itself, which depicts an extraordinarily high spike in Buell's TAC gauge on the night of December 8, 2014, was presented to the court for its review. Buell did not challenge the accuracy of this underlying data in the trial court, nor does he do so on appeal. AMS's conclusion was also corroborated by Mays, who testified, based on her training and experience, that it was impossible for the bracelet to falsely detect alcohol consumption, that the spike on December 8, 2014 was not consistent with an atmospheric interferent, and that a significant alcohol spike in

6

conjunction with a tamper event was consistent with alcohol consumption. We find this testimony, together with the data reflected in the AMS report, was sufficient to corroborate AMS's conclusion. The evidence presented at Buell's revocation hearing supported the trial court's decision.

### IV. Counsel Was Not Ineffective in Failing to Raise a Kelly Objection

We next consider Buell's argument that his defense counsel rendered ineffective assistance by not objecting to Mays's testimony and the AMS report as failing to meet the test set forth in *Kelly*, *supra*, 17 Cal.3d 24, which governs the admissibility of new scientific techniques. To prevail on an ineffective assistance of counsel claim, the appellant must show: (1) that his attorney's performance fell below an objective standard of reasonableness; and (2) that he suffered prejudice; *i.e.*, that there is a reasonable probability that, but for counsel's deficient performance, the outcome of the proceedings would have been different. (*Strickland v. Washington* (1984) 466 U.S. 668, 687, 688 691–694.)

The *Kelly* test "establish[es] the reliability of scientific testing and its scientific basis to determine its admissibility." (*People v. Lucas* (2014) 60 Cal.4th 153, 244, disapproved on other grounds in *People v. Romero and Self* (2015) 62 Cal.4th 1, 53, fn. 19.) "[A]dmissibility of expert testimony based upon the application of a new scientific technique traditionally involves a two-step process: (1) the *reliability of the method* must be established, usually by expert testimony, and (2) the witness furnishing such testimony must be properly *qualified as an expert to give an opinion* on the subject. [Citations.] Additionally, the proponent of the evidence must demonstrate that correct scientific procedures were used in the particular case." (*Kelly*, *supra*, 17 Cal.3d at p. 30, original italics.)

The People argue that, had there been an objection, the first two prongs of the *Kelly* test could have been satisfied by citation to unanimous published opinions holding that ankle monitoring bracelet technology is generally accepted as reliable in the scientific community. (See *People v. Dorcent*, *supra*, 909 N.Y.S.2d at p. 626 [applying

7

*Frye*[2] test]; *Mogg v. State* (Ind. Ct. App. 2009) 918 N.E.2d 750, 757–759 [applying *Daubert*[3] standard]; *State v. Lemler*, *supra*, 774 N.W.2d at pp. 280–286 [applying *Daubert*].)  We agree.  "[O]nce a trial court has admitted evidence based upon a new scientific technique, and that decision is affirmed on appeal by a published appellate decision, the precedent so established may control subsequent trials."  (*Kelly*, *supra*, 17 Cal.3d at p. 32; see *People v. Venegas* (1998) 18 Cal.4th 47, 53.)   Even though these published decisions are from other states, the trial court could properly rely on them in finding that the continuous alcohol monitoring bracelet is generally accepted as reliable in the scientific community.  (See *People v. Allen* (1999) 72 Cal.App.4th 1093, 1099– 1100.)  Buell has not argued that ankle monitoring bracelet technology is not in fact generally accepted as reliable in the scientific community, nor has he pointed us to any authorities to that effect.  (See *People v. Dorcent*, at p. 625 [secure continuous remote alcohol monitoring (SCRAM) alcohol monitoring bracelet is currently used in 46 states and 1,900 jurisdictions].)  Therefore, because the cases cited by the People could have established that ankle monitoring bracelet technology is generally accepted in the scientific community without the need for expert testimony to that effect in this case, we agree that any objection based on *Kelly* would have been futile.

*Kelly*'s third prong requires that "the person performing the test in the particular case used correct scientific procedures."  (*People v. Bolden* (2002) 29 Cal.4th 515, 545.) However, once general acceptance is established by precedent, the "third-prong hearing" that must be conducted will not approach the "complexity of a full-blown" *Kelly* hearing. (*People v. Barney* (1992) 8 Cal.App.4th 798, 824–825.)  "All that is necessary in the limited third-prong hearing is a foundational showing that correct scientific procedures were used."  (*Id.* at p. 825.)

We find that Buell has not demonstrated a reasonable probability that, had an objection been raised based on *Kelly*'s third prong, a different result would have been

---

[2] *Frye v. United States* (D.C. Cir. 1923) 293 F. 1013.

[3] *Daubert v. Merrell Dow Pharms., Inc.* (1993) 509 U.S. 579.

8

reached. Buell does not argue that correct scientific procedures were not used, or that Mays could not have testified that they were. Mays testified she had been trained "[e]xtensively" on the functioning of the alcohol monitoring bracelet. She is the lead case manager of the alcohol monitoring program of the Marin County Probation Department. Mays also testified the ankle bracelet was installed correctly; otherwise it would not have provided readings. As noted, she testified, consistent with the reported cases, that it is not possible for the bracelet to falsely report consumption. We see no reason why Mays would not have been able to satisfy *Kelly*'s third prong had an objection been made. (See *Nolan*, *supra*, 95 Cal.App.4th at p. 1216.) Buell has not argued that the bracelet was functioning improperly or that the data from the bracelet was inaccurate, either before the trial court or on appeal. Buell questions how the December 8, 2014 spike was determined to reflect alcohol consumption, while earlier, smaller spikes did not, but that question was explored during cross-examination at the hearing. Under these circumstances, we conclude Buell has failed to demonstrate that, had a *Kelly* objection been raised, there was a reasonable probability of a different result.

## DISPOSITION

The order revoking Buell's mandatory supervision is affirmed.

_____
Kennedy, J.[*]

We concur:


_____
Ruvolo, P. J.


_____
Rivera, J.


A144046/*People v. Buell*

_____

   [*] Judge of the Superior Court of California, County of Contra Costa, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

10

A144046 – *People v. Buell*


Trial Court:           Marin County Superior Court

Trial Judge:           Hon. Andrew E. Sweet

Counsel:

Monica Rudden and La Dell Dangerfield, Deputy Public Defenders; Spero Law Office, Leah L. Spero, for Defendant and Appellant.

Edward S. Berberian, District Attorney, Leon Kousharin, Lori E. Frugoli, and Margaret Pettigrew, Deputy District Attorneys; Kamala D. Harris and Xavier Becerra, Attorney Generals, Gerald A. Engler, Chief Assistant Attorney General, Jeffrey M. Laurence, Senior Assistant Attorney General, Donna M. Provenzano, Supervising Deputy Attorney General, and Ronald E. Niver, Deputy Attorney General, for Plaintiff and Respondent.