Filed 2/26/21  P. v. Daniels CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

THE PEOPLE,

    Plaintiff and Respondent,

v.

TIFFANY ELIZABETH DANIELS,

    Defendant and Appellant.

E074801

(Super.Ct.No. FVI1800458)

OPINION

APPEAL from the Superior Court of San Bernardino County.  Cara D. Hutson, Judge.  Affirmed.

Stephanie M. Adraktas, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Arlene A. Sevidal and Robin Urbanski, Deputy Attorneys General, for Plaintiff and Respondent.

1

Defendant Tiffany Elizabeth Daniels appeals from an order revoking her mandatory supervision by the probation department. She argues the trial court abused its discretion by overruling her hearsay objection to the testimony of a probation officer that was based on information and records contained in an electronic database. We conclude the probation officer's testimony was admissible under the business records hearsay exception and affirm the order.

## I.

## FACTS AND PROCEDURAL BACKGROUND

On February 21, 2018, defendant pleaded no contest to driving or taking a motor vehicle without the consent of its owner. (Veh. Code, § 10851, subd. (a), count 1.) Pursuant to her plea bargain with the prosecutor, the trial court sentenced defendant to a three-year split sentence consisting of one month in county jail, with time served for presentence custody, and two years 11 months in county jail, suspended, with mandatory supervision by the probation department (the department). At the prosecutor's request, the trial court dismissed one count of receiving a stolen motor vehicle. (Pen. Code, § 496d, count 2.) Among other conditions of her mandatory supervision, defendant agreed to report in person to the department two days later.

On March 6, 2018, the department filed a petition alleging defendant violated the terms of her mandatory supervision because, since her sentencing and release from custody on February 21, she had still not reported in person to the department. After numerous continuances, on August 22, 2018, defendant admitted to violating her

2

mandatory supervision, and the trial court reinstated her mandatory supervision with new, modified conditions.

A little over a year later, on September 9, 2019, the department once more petitioned the superior court to revoke defendant's mandatory supervision, alleging she failed to report to the department in person and failed to comply with directives to contact her probation officer. The trial court conducted a hearing on the petition on February 21, 2020.

T.K., a San Bernardino County probation officer, testified her duties include supervising defendants who are released on mandatory supervision, ensuring those defendants comply with the terms and conditions of their supervision, and "documenting their performance in the community." When asked if she was familiar with how records pertaining to defendants on mandatory supervision are maintained, she testified that, using computer terminals, probation officers such as herself manually type information about defendants into an electronic database. Relevant information is entered the moment it is received or within 24 hours of its receipt, and it is kept in the ordinary course of the department's business. T.K. testified she is responsible for ensuring the information she enters is accurate. Accuracy is important because the records maintained on the database are used to monitor and document a defendant's performance and compliance, and "[i]t's the way that we, as probation officers, communicate with each other to generate court documents." T.K. also testified that she would not "necessarily have had every single contact" with a specific defendant who was on mandatory supervision.

3

T.K. further testified defendant was actively on mandatory supervision. Defense counsel interposed continuing hearsay and lack of foundation objections to any testimony based on information taken from the database, and the trial court overruled the objections. T.K. then testified she prepared a report relating to defendant's mandatory supervision after having obtained her photograph and having reviewed her records on the database.

Finally, T.K. testified that defendant reported to the department for orientation and assessment sometime after February 21, 2018. The terms of her supervision were read to her; she stated she understood those terms; and she was directed to report to the department monthly. Because defendant was living in Los Angeles County at the time, the department directed her to report by mail and instructed her how to do so. Defendant reported by mail for about three months but then informed the department she had been evicted from her residence. The department instructed defendant to mail in a form and identify her new address. Although she complied with that directive, after December 26, defendant failed to regularly report by mail.

On May 31, 2019, the department mailed an appointment letter to defendant at her last known address and instructed her to report by mail no later than June 10, 2019. She failed to report, so on June 14, a probation officer spoke to defendant's sister. The sister said she would tell defendant the officer had called and let her know she needed to report. Because defendant still had not reported by September 13, the department filed its petition to revoke her mandatory supervision. On January 7, 2020, T.K. spoke to defendant while she was in custody. When T.K. asked why defendant did not report,

4

"[s]he seemed to not know" and told T.K. "her excuse was the fax machine must have been broken." She had no explanation as to why she had not repaired her facsimile machine if it was broken.

When asked on cross-examination whether she knew if defendant received the department's May 31, 2019 letter, T.K. testified that all she knew was the letter had been mailed to the address defendant had provided. Nor did T.K. know whether defendant's sister had told defendant that the department had called and that she needed to report.

The trial court found defendant had violated the terms of her mandatory supervised release, revoked that release, and sentenced her to the previously suspended two-year-11-month county jail term, with 751 days of custody credits.

## II.

## DISCUSSION

Defendant argues the trial court abused its discretion by admitting T.K.'s testimony over her hearsay objection, and that the testimony was not admissible under various hearsay exceptions. Because we conclude T.K.'s testimony satisfied the requirements for the business records hearsay exception, we affirm.

Like parole and probation revocation hearings, a hearing to revoke a defendant's mandatory supervision is not part of a criminal prosecution and does not trigger the full panoply of rights under the Sixth Amendment to the United States Constitution. (*People v. Buell* (2017) 16 Cal.App.5th 682, 687; see *Morrissey v. Brewer* (1972) 408 U.S. 471, 480 [parole]; *People v. Vickers* (1972) 8 Cal.3d 451, 458-461 [probation].) Instead, the due process clauses of the Fifth and Fourteenth Amendments require that the defendant

5

receive notice of the claimed violation of mandatory supervision and is given the opportunity to be heard and present evidence before a neutral body. (See *People v. Towne* (2008) 44 Cal.4th 63, 83.)

Relevant here, a defendant has a due process right to confront and cross-examine witnesses at her revocation hearing unless the trial court finds good cause to disallow confrontation. (*Morrissey v. Brewer*, *supra*, 408 U.S. at p. 489.) "The broad standard of 'good cause' is met (1) when the declarant is 'unavailable' under the traditional hearsay standard (see Evid. Code, § 240), (2) when the declarant, although not legally unavailable, can be brought to the hearing only through great difficulty or expense, or (3) when the declarant's presence would pose a risk of harm (including, in appropriate circumstances, mental or emotional harm) to the declarant." (*People v. Arreola* (1994) 7 Cal.4th 1144, 1159-1160.)

Moreover, the prosecution may introduce hearsay at the revocation hearing if it "bears a substantial guarantee of trustworthiness," meaning it has a "'sufficient "indicia of reliability."'" (*People v. Buell*, *supra*, 16 Cal.App.5th at p. 689.) "The determination of whether hearsay evidence is trustworthy rests with the trial court and will not be disturbed on appeal absent an abuse of discretion." (*Ibid.*)

"Evidence Code section 1271 provides that '[e]vidence of a writing made as a record of an act, condition, or event is not made inadmissible by the hearsay rule when offered to prove the act, condition, or event if: [¶] (a) The writing was made in the regular course of a business; [¶] (b) The writing was made at or near the time of the act, condition, or event; [¶] (c) The custodian or other qualified witness testifies to its identity

6

and the mode of its preparation; and [¶] (d) The sources of information and method and time of preparation were such as to indicate its trustworthiness.'" (*People v. Hovarter* (2008) 44 Cal.4th 983, 1010-1011.) The party offering the evidence bears "the burden of establishing the foundational requirement of trustworthiness." (*Id*. at p. 1011.) The trial court has broad discretion to determine whether a sufficient foundation has been laid to qualify the evidence as a business record, and we will not reverse the court's ruling on the foundational question of trustworthiness in the absence of an abuse of discretion. (*Ibid*.)

"'The chief foundation of the special reliability of business records is the requirement that they must be based upon the first-hand observation of someone whose job it is to know the facts recorded. . . . But if the evidence in the particular case discloses that the record was not based upon the report of an informant having the business duty to observe and report, then the record is not admissible under this exception, to show the truth of the matter reported to the recorder.'" (Cal. Law Revision Com. com., 29B pt. 5 West's Ann. Evid. Code (2015 ed.) foll. Evid. Code, § 1271, p. 6;[1] see *Taylor v. Centennial Bowl*, *Inc*. (1966) 65 Cal.2d 114, 126.) Here, the trial court did not expressly find the prosecutor had satisfied the foundational requirements to admit T.K.'s testimony under the business records hearsay exception but, by overruling defendant's hearsay objection and admitting the testimony, the court made "an implied

---

[1] While not binding, the official comments of the California Law Revision Commission on sections of the Evidence Code are declarative of the Legislature's intent and are entitled to substantial weight. (*People v. Riccardi* (2012) 54 Cal.4th 758, 824; *HLC Properties*, *Ltd. v. Superior Court* (2005) 35 Cal.4th 54, 62.)

7

finding . . . that the conditions of the trustworthiness requirement [had] been met." (*People v. Hovarter*, *supra*, 44 Cal.4th at p. 1011, fn. 12; see Evid. Code, § 402, subd. (c).)

Defendant does not dispute that the records from the database were made in the regular course of the department's business. (Evid. Code, § 1271, subd. (a).) T.K. testified that one of her duties as a probation officer is to document defendant's performance on mandatory supervision; probation officers such as herself manually enter information about a defendant's performance and compliance with the terms of the supervision into the database using computer terminals; information is entered "at [the] moment" it is received "or within 24 hours" of its receipt; those electronic documents are kept in the regular course of the department's business; she is responsible for ensuring she accurately enters information into the database; and maintaining the accuracy of those records is important because they are used to monitor defendants and to communicate with other probation officers. That testimony amply satisfied the first requirement.

The second foundational requirement for the business records exception—that the records were made "at or near the time of the act, condition, or event" (Evid. Code, § 1271, subd. (b))—was also satisfied. To repeat, T.K. testified that information about defendants on mandatory supervision is entered into the database "at [the] moment" it is received or, at most, within 24 hours of its receipt.

In the context of her discussion of the hearsay exception for records of public employees under Evidence Code section 1280, defendant contends "testimony that information was entered into [the database] within 24 hours was not sufficient" to

establish the "timeliness requirement" for that exception.  She cites *People v. Martinez* (2000) 22 Cal.4th 106, which held Evidence Code section 1280 was designed to ensure the time gap between an event and its entry was not so long "'as to suggest a danger of inaccuracy due to lapse of memory.'"  (*Id*. at p. 128.)  According to defendant, "[b]ecause probation officers can allow 24 hours to elapse before entering information into the [database] system, there is an unacceptable risk that the entries are inaccurate or incomplete."  But defendant cites no authority for the proposition that the business records exception applies *only* when the record is made within minutes, or at most within a few short hours (she does not propose a number) after the act, condition, or event it memorializes.  And, considering the heavy caseloads and increased responsibilities placed on probation departments, the rule suggested by defendant would be impracticable to say the least.

Next, we conclude T.K. was qualified to testify about the "identity" of the records maintained in the database and the "mode of [their] preparation."  (Evid. Code, § 1271, subd. (c).)  This requirement is satisfied by the testimony of a witness who is knowledgeable about the "procedures followed" (*Jazayeri v. Mao* (2009) 174 Cal.App.4th 301, 322) or the "various steps involved in the preparation of the writing" (1 Jefferson, Cal. Evidence Benchbook (Cont.Ed.Bar 4th ed. 2020) Business Records, § 4.9, p. 4-7).  T.K.'s testimony about how she and other probation officers with the department go about entering information about defendants into the database satisfies this requirement.

Defendant's main contention is that T.K.'s testimony did not establish that "[t]he sources of information and method and time of preparation were such as to indicate its

9

trustworthiness." (Evid. Code, § 1271, subd. (d).) According to defendant, T.K.'s testimony did not establish that probation officers "have a statutory or rule based duty to record *all* contacts with a probationer," and "the absence of a record" in the database— such as the absence of an entry for a defendant's failure to report—"was not admissible to prove that such a contact did not occur." But, unlike the hearsay exception for records created by public employees, the business records hearsay exception does not require a duty imposed by *statute* or *rule*—it requires a "'*business* duty'" to accurately "'observe and report'" the information contained in the record. (Cal. Law Revision Com. com., 29B pt. 5 West's Ann. Evid. Code, *supra*, foll. § 1271, p. 6, italics added.)

T.K. testified that one of her duties is to document a defendant's performance in the community while on mandatory supervision. She also testified about how she and other probation officers go about entering information into the database, how they are responsible for making sure the information is accurate, and how accurately entering the information is important because it is used to monitor a defendant's performance and to communicate information to other probation officers. To be sure, T.K. was not explicitly asked and did not explicitly testify that accurately entering information was one of her official duties as a probation officer.

10

Defendant's argument implicitly raises the question—when does a business duty arise? She provides no answer and cites no authority that does so.[2] Must the witness testify that accurately reporting and recording certain facts is part of her official job description? Does the proponent prove the existence of a business duty only when the witness expressly testifies she has been instructed by a superior to accurately report and record information important to the daily operation of the business or government agency? Or, instead, may a court find the existence of a business duty from the witness's general duty of care and loyalty owed to the business or agency by the very nature of her position of responsibility? We conclude the latter must be true, T.K.'s testimony established she and her fellow probation officers were under such a duty of care, and her testimony established the records in the database were trustworthy.

Because we conclude T.K.'s testimony was admissible under the business records hearsay exception, we hold the trial court correctly overruled defendant's hearsay objection.

---

[2] As one court has stated, the question of when a reporter or recorder of information is under a "'business duty'" for purposes of the business record hearsay exception "is . . . the source of a good bit of uncertainty in the case law. It is clear enough, of course, that an employee or agent of the business activity in question will ordinarily be considered as acting under such a 'business duty;' and it is equally clear that a mere volunteer or bystander—someone lacking any ongoing business relationship with the business activity—will not be." (*White Industries Inc. v. Cessna Aircraft Co.* (W.D. Mo. 1985) 611 F.Supp. 1049, 1060.)

III.

DISPOSITION

The order revoking defendant's mandatory supervision is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

McKINSTER
            Acting P. J.

We concur:


MILLER
        J.


FIELDS
        J.