Filed 6/29/21  P. v. Plascencia CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

<table>
<tr><td>THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>DANIEL PLASCENCIA,<br><br>    Defendant and Appellant.</td><td>B303180<br><br>(Los Angeles County Super. Ct. No. VA147630)</td></tr>
</table>

APPEAL from a judgement of the Superior Court of Los Angeles County, John A. Torribio, Judge.  Affirmed as modified.

Janet Uson, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Scott A. Taryle and David A. Voet, Deputy Attorneys General, for Plaintiff and Respondent.

———————————————

Daniel Plascencia appeals from convictions for voluntary manslaughter and related firearm and robbery charges. On appeal, he claims: (1) the trial court abused its discretion in admitting character evidence, unreliable hearsay, and evidence appellant was hiding out with fellow gang members; (2) the court prevented him from putting on a defense by excluding portions of his testimony; (3) the court failed properly to instruct the jury; (4) the prosecutor committed misconduct during closing argument; (5) the evidence established as a matter of law that appellant acted in self-defense; and (6) the sentence on one of the assault counts must be stayed under Penal Code section 654.[1]

We agree with appellant that one of his assault counts must be stayed under section 654. We otherwise affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

1. *Appellant's Relationship with the Victim's Sister*

Appellant and Graciela Hernandez dated for 10 years and had two children together. Their relationship deteriorated after appellant started using drugs and became emotionally and physically abusive. Eventually they lived apart. The murder victim, Graciela's brother Fernando Hernandez, was very protective of Graciela, and unhappy about appellant's harassment.[2] Both Fernando and appellant were members of the Loco Park gang; appellant's moniker was "Heat."

During the months prior to the shooting, appellant choked Graciela, and harassed her at work and home. He once came to

---

[1] All further undesignated statutory references are to the Penal Code.

[2] We refer to siblings Graciela and Fernando by their first names for clarity's sake. We intend no disrespect.

her house and flashed a gun before taking the children. Graciela told him she was going to get custody of their children, and he would have to use the "court system" to see them.

### 2. *The Shooting*

The day before the shooting, appellant showed up at Graciela's workplace asking her to arrange a visit with the children. She called the police, who advised her to get a restraining order. The next morning, Graciela told Fernando she intended to go to the courthouse to apply for a restraining order. Fernando helped her install security cameras at the house.

Later that day, Fernando returned from an errand to find the appellant's moniker ("Heat") written on the front window of his house. Surveillance footage showed appellant standing at the window. Fernando was upset, and drove to appellant's home with his uncle and cousin. When they arrived, Fernando walked up the driveway calling for appellant, while his relatives stayed in the car. Appellant came out of the house and shot Fernando in the chest multiple times. Fernando pulled out a gun and unsuccessfully returned fire.

Fernando staggered to the grass, mortally wounded, and appellant ran to Fernando's car in which Fernando's uncle and cousin were still sitting. Appellant, still holding his gun, took the car keys out of the ignition. Appellant then rode away on his bike. The uncle called 911. Fernando had suffered four gunshot wounds and died moments later.

### 3. *The Charges*

The police arrested appellant two days later at a residence where other members of his gang were present. The district attorney charged appellant with murder (§ 187, subd. (a)), two counts of assault with a semiautomatic firearm (§ 245, subd. (b)),

3

possession of a firearm by a felon (§ 29800, subd. (a)(1)), unlawful possession of ammunition (§ 30305, subd. (a)(1)), and robbery (§ 211). Firearm and prior prison term enhancements were also alleged. Appellant pled not guilty and denied all allegations.

## 4. *Trial*

### a. **Graciela's Testimony**

Graciela testified about appellant's harassment and physical abuse. He stalked her, broke her phone, deflated one of her tires, and flashed a gun at her. As for direct physical abuse, she testified he "choke[d] [her] out." According to Graciela, appellant always carried a semiautomatic gun.

### b. **Fernando's Uncle's Testimony**

Fernando's uncle testified that, on the day of the shooting, Fernando became upset when he saw appellant's graffiti on the window of his house. Fernando, who wanted "to go talk to [appellant], just to settle matters," drove to appellant's house with his uncle and cousin in the back seat. Once they arrived, Fernando, from the driveway, called out to appellant. Appellant came out of his house and approached Fernando. Fernando said, " 'Why are you doing—continue doing this?' "

Appellant then "returned back to his house, and when he came back, he . . . sa[id] 'This is what you want,' he opened the door—and—and he shot [Fernando] in the chest a few times." Only after appellant had shot Fernando did Fernando pull out a gun.

After the shooting, appellant approached Fernando's car and pointed a gun at the uncle's and cousin's heads. Appellant asked them if they "had something against him." The uncle "told him that he was a coward." Appellant took the car keys and,

4

before leaving on a bicycle said, " 'This is what he wanted,' " and "laughed about what he had done."

### c. Fernando's Cousin's Testimony

Fernando's cousin also testified at trial, but claimed not to remember the shooting. The prosecution received in evidence a recording and transcript of the cousin's interview with the police on the day of the shooting. The cousin told the police that Fernando and appellant had a history of confrontations. Fernando had "put hands on [appellant] before . . . beat him up . . . ." Appellant, in turn, had sent Fernando a text message three months prior, saying "one of us gonna be dead and either you or me." When asked if Fernando had ever said he "wanted to shoot somebody," the cousin said " 'only if, if they mess with his family. . . .' " The cousin had seen Fernando in many fights and told police Fernando believed that "when you fuck with family, you know, bang is necessary."

The cousin also told police that the day of the shooting, Fernando "exploded" when he saw the graffiti on his window. Fernando drove to appellant's house and walked up the driveway calling appellant's name, "screaming it loud." Fernando yelled "come out and get down [¶] . . . [¶] saying all this like he wants to confront [appellant] . . . ." Appellant came out of the house and approached Fernando until they were about five feet apart. Fernando confronted appellant about the graffiti on his window and said, "you been doing too much already, . . . we have to get down or we're gonna have to draw, draw up . . . ." The cousin said that Fernando is "always on that tip when it comes to personal, he always carries his [] handgun . . . ."

The two men were arguing until appellant pulled a gun out and pointed it at Fernando. Fernando said, "so it's gonna be like

that" and reached around his waist to grab his gun when appellant started shooting. Appellant's third shot hit Fernando in the chest. Fernando fired shots in return, missing appellant, and then the gun fell from his hand. Appellant ran toward Fernando's car and opened the passenger door. While grabbing the car keys, appellant pointed his gun at the cousin and uncle. Appellant then biked away.

### d. The Defense Case

Before appellant took the stand, the parties stipulated he had been convicted of three prior felony firearm charges and a felony charge of possession for sale of cocaine.

Appellant testified that he never threatened Graciela or physically abused her. He and Fernando had a falling out "over the course of the rocky part" of appellant's relationship with Graciela. The parties stipulated that Fernando had pled guilty to a felony charge of negligent discharge of a firearm. Appellant testified that he knew about this conviction and was afraid of Fernando. Fernando's moniker was "Blam," "[t]he sounds of a gun."

Appellant denied threatening Fernando. According to appellant, it was Fernando who in the past had threatened to shoot appellant. When Fernando came to appellant's house on the day of the shooting appellant grabbed a gun for protection before going out to meet Fernando. Once appellant was outside, Fernando screamed at him, "What the fuck is up with you? Why are you doing this shit?" Appellant responded, "Quit interfering with me and my family." Fernando stated, "Come on. Let's take a walk," which appellant believed to be a challenge to a fight. After Fernando pointed a gun at appellant, appellant pulled out his own gun. Both men started shooting simultaneously.

6

Appellant acknowledged that, after the shooting stopped, he took the keys from appellant's car still holding the gun. He denied having said anything to Fernando's uncle or cousin. Appellant stole the keys because he was afraid they would follow him. He threw the keys away a few blocks from his house, and threw his gun in a trash can.

### e. Closing Argument

In closing, the prosecutor argued that, according to the testimony of Fernando's cousin and uncle, appellant took out his gun first and fired three shots at Fernando. The prosecutor was unconvinced with appellant's claim that he was afraid of Fernando, and argued that appellant's action of writing his moniker on Fernando's house demonstrated that lack of fear. The prosecutor pointed to appellant's decision to bring his gun with him when he approached Fernando as evidence of premeditation and deliberation.

Defense counsel argued that appellant had acted in self-defense when he shot Fernando. Counsel highlighted appellant's testimony that he only started shooting when Fernando pulled out his gun, and argued that Fernando's cousin and uncle were not credible.

### f. Sentencing

The jury convicted appellant of second degree murder and found him guilty of the remaining charges. The jury also found the firearm allegations to be true. Over the prosecution's objection, the trial court reduced the murder conviction to voluntary manslaughter. The court sentenced appellant to 25 years 4 months.

The court imposed a base term of 11 years on the manslaughter count, plus a 10-year term for a firearm

7

enhancement, and a consecutive term of 1 year for the robbery charge plus 3 years 4 months for a firearm enhancement. The court imposed concurrent terms for the remaining counts: 6 years plus a 3-year enhancement for each of the assault with a firearm counts, and 2 years each for the felon in possession and unlawful possession of ammunition counts.

Appellant filed a timely notice of appeal.

## DISCUSSION

### 1. *The Trial Court's Evidentiary Rulings*

Appellant argues the trial court erred in admitting (1) statements by Fernando's cousin about appellant's physical abuse of Graciela, (2) the cousin's statement about appellant's text message to Fernando, and (3) evidence that appellant was arrested in the company of fellow gang members. In appellant's view, the statement about the physical abuse was inadmissible character evidence, the text message reference was unreliable hearsay, and the testimony about gang members was unduly prejudicial.

Appellant also argues the trial court erred in excluding appellant's own testimony about (1) claimed harassment of Graciela and (2) Fernando's violent character. We review trial court rulings on the admissibility of evidence for abuse of discretion. (See *People v. Waidla* (2000) 22 Cal.4th 690, 717.)

### A. **The Statement Appellant Physically Abused Graciela**

During a detective's recorded interview with Fernando's cousin, the cousin said although he had not seen appellant hit Graciela he had "seen some marks on her neck like strangle . . . ." Appellant argues this statement had little probative value and prejudicially suggested he had a propensity for violence.

8

Respondent argues the statement was admissible to show appellant had a violent character given that appellant had announced an intent to present evidence of Fernando's violent character.

"[I]f the defendant has offered 'evidence that the victim had a character for violence or a trait of character tending to show violence,' the prosecution is permitted to offer 'evidence of the *defendant's* character for violence or trait of character for violence (in the form of an opinion, evidence of reputation, or evidence of specific instances of conduct)' in order 'to prove conduct of the defendant in conformity with the character or trait of character.' ([Evid. Code,] § 1103(b), italics added.)" (*People v. Fuiava* (2012) 53 Cal.4th 622, 695–696 (*Fuiava*).)

Here, in defense counsel's opening statement, he told the jury the evidence would show appellant knew Fernando was violent and had good reason to fear him. By proffering evidence of the victim's violent character, the defense opened the door to evidence of appellant's own character. Appellant does not dispute respondent's argument that Fernando's cousin's statement about marks on Graciela's neck was admissible under Evidence Code section 1103, but instead argues the evidence was unduly prejudicial and had little probative value under Evidence Code section 352.

Given that the central issue in this case was whether appellant acted in self-defense when he shot Fernando, appellant's propensity for violence was highly probative. The subject evidence was also not particularly prejudicial because Graciela had already testified that appellant "choke[d] [her] out." The court acted within its discretion in admitting the statement

9

both under state law and constitutional principles.[3]  (See *Fuiava*, *supra*, 53 Cal.4th at p. 670 [where the trial court does not abuse its discretion under state law in admitting evidence, the admission also does not violate the defendant's right to a fair trial].)

### B.    Appellant's Text Message to Fernando

The recorded interview Fernando's cousin gave to police was played for the jury.  In the interview, the cousin said that he saw a text message appellant had sent to Fernando stating, "[W]e're gonna, . . . one of us gonna be dead and either you or me."  The text message itself was not introduced in evidence.  Appellant argues this evidence was hearsay and untrustworthy because the prosecution did not provide additional evidence, such as the original text message, to corroborate the cousin's recollection.

"Evidence of a statement is not made inadmissible by the hearsay rule when offered against the declarant in an action to which he is a party . . . ."  (Evid. Code, § 1220.)  Assuming the statement is relevant, appellant's hearsay statement is admissible as a party admission.[4]  (See *People v. Jennings* (2010)

---

[3]    Respondent made additional arguments in support of the admissibility of the challenged statements, however, because we conclude the evidence was admissible under Evidence Code section 1103, we decline to address those contentions.

[4]    Appellant states in his opening brief that the evidence about the text message was inadmissible because it lacked foundation.  We understand appellant's reference to foundation not as a separate, albeit undeveloped, argument, but as shorthand for his more fully developed point that the evidence was inadmissible because it was "unreliable hearsay."

50 Cal.4th 616, 661–662.)

"A defendant's threat against the victim [] is relevant to prove intent in a prosecution for murder." (*People v. Rodriguez* (1986) 42 Cal.3d 730, 757.) Here, appellant's prior threat was relevant because it demonstrated his intent to kill, and as the prosecutor argued, whether he acted with premeditation and deliberation. (See *People v. Farley* (2009) 46 Cal.4th 1053, 1107.) Appellant's argument that the text was too remote in time and unreliable because it was uncorroborated affected the weight of the evidence, not its admissibility. The court acted within its discretion in admitting this evidence.[5] (See *Fuiava, supra*, 53 Cal.4th at p. 670.)

## C. Evidence Appellant was Arrested with Gang Members

Appellant argues the trial court erred both under state law and federal constitutional principles in admitting evidence that he was arrested in the presence of fellow gang members. He contends this evidence was irrelevant, cumulative, and inflammatory. We treat the argument as invoking Evidence Code section 352 and relevance principles. Respondent argues the

---

[5] In his reply brief, appellant argues the text was inadmissible under Evidence Code section 1523 because the evidence did not comply with the "best evidence rule." Not only was the argument raised for the first time on appeal in the reply brief, appellant did not object on that ground in the trial court. The contention is waived. (See *Nordstrom Com. Cases* (2010) 186 Cal.App.4th 576, 583 ["A party may not raise an issue for the first time on appeal [citation], and points raised for the first time in a reply brief on appeal will not be considered, absent good cause for failure to present them earlier [citation]."].)

11

evidence was relevant to appellant's consciousness of guilt and was admissible under Evidence Code section 352.

At trial, a detective testified that appellant was arrested after leaving a residence where there were confederate gang members as well as gang paraphernalia. Defense counsel moved to exclude this evidence under Evidence Code section 352. The prosecutor argued the information was relevant to appellant's self-defense claim, as his actions of leaving the scene and hiding out with his gang was inconsistent with that claim. The trial court admitted the evidence.

We agree with respondent that the evidence was relevant to his consciousness of guilt. (See *People v. Vu* (2006) 143 Cal.App.4th 1009, 1030 [hiding after a crime is relevant to show consciousness of guilt].) The reasonable inference from this evidence was that fellow gang members would be less likely to report appellant to the police. We also agree with respondent that it had little prejudicial effect. Not only did the jury already know that appellant was a gang member, it knew that appellant and the victim were in the same gang. Because the court acted within its discretion under state law in admitting this evidence, the admission did not violate defendant's right to a fair trial. (See *Fuiava*, *supra*, 53 Cal.4th at p. 670.)

### D. Limitations on Appellant's Testimony

Appellant contends the trial court erred in excluding his testimony "explaining [appellant's] incidents with Graciela," and about Fernando's purported statement to appellant that he fired shots at the ex-boyfriend of Fernando's wife. Appellant argues the court's rulings infringed on his federal constitutional right to present a defense.

### i. The Trial Court's Rulings

When appellant took the stand at trial, his attorney asked him about Graciela's claims appellant had harassed her. The trial court sustained the prosecutor's relevance objections to questions about "why" he did not want Fernando to know he visited Graciela and his kids, whether Graciela did not always "show up with the kids" to visits, "why" he harassed her, appellant's visiting Graciela's house "uninvited," and the details surrounding the incident when he broke her phone.

The court also sustained the prosecutor's objections to question about what Fernando told appellant about the incident underlying Fernando's conviction for negligent discharge of a firearm. At side bar, defense counsel made an offer of proof that appellant would say Fernando told him he shot at his wife's ex-boyfriend. In sustaining the objection, the court reasoned that the jury already knew about Fernando's conviction for firing a gun, and appellant's claim about what Fernando said prior to his death was untrustworthy.

### ii. The Court Did Not Err in Excluding This Evidence

The court acted within its discretion in excluding this evidence. First, appellant has not shown why his testimony "explaining the incidents with Graciela" was "necessary," as he claims, "to rebut the prosecution's inferences that Fernando's action of going to appellant's home while armed was justified, and that appellant had a character for violence." Whether Fernando was justified or not in confronting appellant, the question before the jury was whether appellant acted in self-defense when he shot Fernando. The court acted within its discretion under Evidence Code section 352 in concluding that

13

appellant's testimony about his reasons for harassing Graciela distracted from the issues properly before the jury.

Second, as to the prior discharge of a firearm, the court reasonably determined that Fernando's alleged statement about shooting at his wife's ex-boyfriend lacked sufficient trustworthiness for admission at trial. Trustworthiness is a threshold requirement for admission of a hearsay statement against penal interest under Evidence Code section 1230. (See *People v. Cudjo* (1993) 6 Cal.4th 585, 607.) "The determination whether hearsay evidence is trustworthy rests with the trial court and will not be disturbed on appeal absent an abuse of discretion." (See *People v. Buell* (2017) 16 Cal.App.5th 682, 689.) Here, appellant had a motive to cast Fernando as a violent killer, and there was no evidence corroborating Fernando's alleged statement.

Even if this statement were admissible as sufficiently trustworthy, it was also subject to Evidence Code section 352. (See *People v. Geier* (2007) 41 Cal.4th 555, 584 overruled on another point by *Melendez-Diaz v. Massachusetts* (2009) 557 U.S. 305.) Fernando's character and reputation for violence was already well-established: the jury heard he was a gang member who always carried a handgun, his cousin said he had seen Fernando in many fights and Fernando believed that "bang" was necessary when his family was threatened, and appellant testified that Fernando's moniker was "Blam" for the sound of a shot being fired. The jury also heard that appellant and Fernando had a history of confrontations, and Fernando had been convicted of negligent discharge of a firearm. Weighing this record with what the trial court considered unreliable— appellant's claim that Fernando had prior to his death claimed to

14

have shot at his wife's ex-boyfriend—the court reasonably excluded this testimony under Evidence Code section 352.

We find no state evidentiary error, nor any violation of appellant's constitutional rights. The court's application of the ordinary rules of evidence here did not impermissibly infringe on appellant's right to present a defense. (See *People v. Snow* (2003) 30 Cal.4th 43, 90.)

## 2.  *Jury Instructions*

Appellant raises two claims of instructional error. First, he argues the trial court erred in declining to give a special robbery instruction stating that the intent to steal must be formed before or during the application of force. Second, he contends the court erred in failing to instruct on the lesser offense of petty theft.

### A.  Intent to Steal

The trial court instructed the jury that for the crime of robbery, the requisite specific intent to permanently deprive an owner of his property must be formed "before or at the time that the act of taking the property occurred." Defense counsel requested an additional instruction that robbery requires *the intent to steal* arise "before or during the application of force." Defense counsel argued that if the jury believed that appellant "did not point the gun at them in the car but . . . the shooting itself [w]as the basis of the force or fear," then appellant did not have the requisite intent to steal because when appellant was shooting at Fernando, appellant did not yet intend to take the keys. The court declined to give the instruction, reasoning "I don't think we can subdivide this conduct." We understand the court's comment to mean that it would not tell the jury, on the element of fear, to consider separately appellant shooting

15

Fernando and appellant approaching the car while displaying a gun.

The " 'general rule [is] that a trial court may properly refuse an instruction offered by the defendant if it incorrectly states the law, is argumentative, duplicative, or potentially confusing [citation], or if it is not supported by substantial evidence.' [Citation.] We review de novo whether instructions correctly state the law. [Citations.]" (*People v. Scully* (2021) 11 Cal.5th 542, 592.)

Appellant argues the failure to give the pinpoint instruction violated his right to due process. He claims the prosecution relied on alternative theories for the robbery: that, when appellant stole the car keys, the car occupants were in fear either because of witnessing the shooting or because appellant still had a gun in his hand. Appellant claims the evidence under the first theory was insufficient because robbery requires that the intent to take property arise before or during the commission of the act of applying fear against the victim. (*People v. Letner and Tobin* (2010) 50 Cal.4th 99, 166.) There was nothing to suggest that appellant formed the intent to steal when he and Fernando were shooting at each other.

We reject the argument because the record does not support appellant's premise. The prosecution did not rely on two separate theories for the robbery. The district attorney accurately stated in closing that Fernando's uncle and cousin were in fear because appellant "had a gun in his hand when he took that property. . . . [T]he two people . . . just saw him shoot their relative. He still has a gun in his hand, and now he's at the car. And he's leaning into the car and he's pointing the gun at them." We do not read this as alternative prosecution theories of

how fear effected the robbery. Rather, we agree with the trial court that appellant's conduct cannot be subdivided. Although appellant denied pointing his gun at the uncle and cousin, he acknowledged he was holding the gun when he approached the car and took the keys. That he had just shot Fernando in full view of the two car occupants heightened the power of the gun directed toward Fernando's relatives to evoke fear in them. Because the proposed pinpoint instruction did not fit the facts of the case, the trial court did not err in refusing to give it.

**B.     Lesser Included Offense of Theft**

Appellant also argues the court erred in denying defense counsel's request for an instruction on the lesser included offense of petty theft. (See *People v. Villa* (2007) 157 Cal.App.4th 1429, 1434 ["Theft is a lesser included offense of robbery."].) If "the jury relied on the shooting to establish the force or fear element of the robbery," he argues, and there was no substantial evidence he had larcenous intent at the time of the shooting, then he would only be guilty of theft.

"Due process requires that the jury be instructed on a lesser included offense *only* when the evidence warrants such an instruction. [Citations.]" (*People v. Gutierrez* (2002) 28 Cal.4th 1083, 1145.) Here, as discussed, the prosecution's theory was that appellant employed fear by taking the car keys while holding a gun. Evidence that appellant only committed petty theft was legally insufficient, and the trial court was not required to instruct on the lesser included offense. (See *People v. Rodriguez* (1997) 53 Cal.App.4th 1250, 1269.)

**3.     *Prosecutorial Misconduct***

Appellant argues the prosecutor engaged in misconduct during closing argument first by attributing statements to

17

appellant that were not in evidence, and, second, by mischaracterizing appellant's testimony.  We conclude appellant forfeited these claims by failing to object.

During closing, the prosecutor attributed the following statements to appellant:  "He showed up at my pad and wanted to get down.  That's right.  He wanted to have a fight.  Instead, I gave him lead."  We agree that there was no evidence of the quoted remarks.

Appellant acknowledges his trial counsel did not object to these statements.  He has therefore forfeited this claim by failing to make a timely objection.  (See *People v. Arias* (1996) 13 Cal.4th 92, 159.)  Although he argues any objection would have been futile, on the contrary, an objection would likely have been sustained, thus informing the jury that the statements were not in evidence.

Appellant points to a second instance of claimed misconduct.  During closing, the prosecutor argued, "When confronted with the statement that [appellant] made about he had to let up three or four times to make it a fair fight, he says, 'Oh, that had to do with prior incidents.'  No.  He let up because he had just shot him three times.  The guy didn't even have his gun out."  Defense counsel then addressed this argument, reminding the jury that when appellant was asked about the statement, "the answer to that question was, 'No, I did not say that.  [¶] . . . [¶]  He said . . . the statement I think you're referring to is there was a prior time when he, Fernando, pulled up on me, and it had nothing to do with the incident we're talking about."

Again, appellant failed to object to the claimed mischaracterization of his testimony, and, again, he has forfeited this argument.  (*Arias, supra*, 13 Cal.4th at p. 159.)  Appellant

claims an exception to the rule of forfeiture on the grounds the prosecutorial misconduct constituted "a pattern so egregious as to violate [his] due process rights and den[y] him a fair trial." (See *People v. Friend* (2009) 47 Cal.4th 1, 29 [the forfeiture rule may be set aside when the " 'misconduct [is] pervasive, defense counsel [has] repeatedly but vainly objected to try to curb the misconduct, and the courtroom atmosphere was so poisonous that further objections would have been futile' "].) The present case does not rise to this level. The two cited instances during a lengthy closing argument did not constitute a pattern of misconduct nor were the cited comments such a departure from the facts as to be considered egregious.

Appellant's fall-back position on the claimed misconduct is that his trial counsel rendered ineffective assistance by failing to object. The argument does not persuade us. Appellant argues "there was no reasonable tactical explanation for counsel's failure to object" because the jury had already heard the statements attributed to appellant. However, defense counsel could have made a reasonable tactical decision that rather than objecting, counsel would highlight the prosecutor's comments as a mischaracterization which, in fact, defense counsel did. Counsel's decision to directly address the purported mischaracterization of appellant's testimony may have been a reasonable attempt to gain credibility with the jury. Defense counsel may have also reasonably interpreted the prosecutor's purported misstatement as an attempt to characterize appellant's attitude, rather than a direct quote of appellant's testimony. Appellant has not shown ineffective assistance. (See *People v. Weaver* (2001) 26 Cal.4th 876, 925–926.)

19

**4.**     *Evidence Appellant Acted in Self-Defense*

Appellant argues the prosecution put forth insufficient evidence for the jury to reject his claim of self-defense.  He points to evidence that appellant was "aware of Fernando's character for violence," including that Fernando had discharged a gun at someone, appellant knew Fernando's moniker was "Blam" which mimicked the sound of a fired gun, appellant had a reasonable belief that Fernando came to his house to kill him, and Fernando fired multiple shots at appellant.

" ' "To justify an act of self-defense . . . the defendant must have an honest *and reasonable* belief that bodily injury is about to be inflicted on him." ' [Citation.]  . . .  Additionally, '[t]he threat of bodily injury must be imminent' and the force used in response ' "reasonable under the circumstances." ' [Citation.]" (*People v. Brady* (2018) 22 Cal.App.5th 1008, 1014.)  The prosecution has the burden of proving beyond a reasonable doubt that appellant did not act in lawful self-defense.  (See *People v. Lee* (2005) 131 Cal.App.4th 1413, 1429.)  " 'In assessing the sufficiency of the evidence, we review the record in the light most favorable to the judgment to determine whether it discloses evidence that is reasonable, credible, and of solid value such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.  [Citations.]' " (*People v. Cardenas* (2015) 239 Cal.App.4th 220, 226.)

The issue for the jury was whether a reasonable person in appellant's situation would be justified in believing he was in imminent danger of bodily harm.  Under this standard, the prosecution supplied sufficient evidence for the jury to reject appellant's claim of self-defense based on a lack of reasonableness.  Appellant's summary of the record is one-sided.

As to his own violent conduct, he focuses only on evidence in his favor and ignores the evidence showing he choked Graciela and flashed a gun at her, had multiple felony firearm convictions, texted Fernando that either he or appellant was "gonna be dead," and came out of his house armed and shot Fernando when the victim was not yet holding a gun. And he ignores the testimony of Fernando's relatives that appellant shot first. The evidence appellant omits was sufficient for the jury to conclude, beyond a reasonable doubt, that appellant did not act in self-defense when he killed Fernando.

5. ***Section 654***

Appellant was convicted of two counts of assault with a firearm: the first based on appellant's firing a bullet during the shoot-out which struck the car containing Fernando's cousin and uncle; and the second based on appellant waving a gun at the passengers when he took the car keys.[6] Appellant now contends the trial court should have stayed the sentence it imposed for the second assault with a firearm conviction because the assault at the car was one of the elements of the robbery. Appellant argues that he cannot be punished for both the second assault and the robbery because section 654 prohibits dual punishment for

---

[6] The information alleged two counts of assault with a firearm, one against Fernando's uncle (count 1) and the second against Fernando's cousin (count 2). The verdict forms followed suit: count 1 named the uncle as the victim, and count 2, the cousin. In closing, the prosecutor argued that appellant was guilty of both counts based on two separate acts: first, shooting at the car in which cousin and uncle were sitting as evidenced by one of the bullets that struck the car; and second, pointing the gun at the uncle and cousin when appellant took the car keys.

21

offenses arising from the same act.  Respondent concedes this, and we agree.

"It has long been recognized that where a defendant is convicted of robbery and other crimes incidental to the robbery such as assault, section 654 precludes punishment for both crimes."  (*People v. Mitchell* (2016) 4 Cal.App.5th 349, 354.)  We therefore order the sentence on the second count for assault stayed.

## DISPOSITION

The sentence for count 2, assault with a semiautomatic firearm, is stayed pursuant to Penal Code section 654.  The judgment is affirmed as modified.


RUBIN, P. J.

WE CONCUR:



MOOR, J.



KIM, J.

22