Filed 8/5/22  P. v. Clemente CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>      Plaintiff and Respondent,<br><br>      v.<br><br>OSCAR CLEMENTE, JR.,<br><br>      Defendant and Appellant. | D079302<br><br><br><br>(Super. Ct. No. JCF000622) |

APPEAL from a judgment of the Superior Court of Imperial County, Poli Flores, Jr., Judge.  Affirmed.

Shay Dinata-Hanson, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Arlene A. Sevidal and Andrew Mestman, Deputy Attorneys General, for Plaintiff and Respondent.

Oscar Clemente, Jr., appeals the judgment sentencing him to prison after the trial court found he violated the terms and conditions of probation

he had been granted as part of a plea bargain. He contends the evidence was insufficient to establish the violations, and remand for resentencing is required based on recent legislation limiting the court's authority to impose an upper-term prison sentence. We reject these contentions and affirm the judgment.

## I.

## BACKGROUND

### A.   *Grant of Probation*

Clemente pled no contest to infliction of corporal injury on a cohabitant with a prior conviction within seven years. (Pen. Code, § 273.5, subd. (f)(1).) On June 4, 2018, the trial court suspended imposition of sentence and placed Clemente on formal probation for three years. The terms and conditions of probation included requirements, among others, that Clemente: (1) complete 150 hours of community service as directed by the Imperial County Probation Department (the Department); (2) participate in cognitive and behavioral counseling and educational programming as directed by the Department; (3) complete a 52-week certified anger management course as directed by the Department; (4) abstain from possession or use of alcohol; (5) obey all laws; (6) report any arrests to his probation officer within 48 hours; and (7) not drive a motor vehicle with any detectable amount of alcohol in his system.

### B.   *Revocation of Probation*

On April 5, 2021, the Department filed a petition for revocation of probation. (Pen. Code, § 1203.2, subd. (b)(1).) The Department alleged Clemente violated the probation condition requiring him to obey all laws when, on June 12, 2020, he committed a hit-and-run resulting in property damage (Veh. Code, § 20002, subd. (a)) and unlawfully operated a motor

vehicle without an ignition interlock device (*id.*, § 23247, subd. (e)).[1] The Department alleged two other violations arising out of the hit-and-run incident: (1) Clemente failed to report the incident to the probation officer within 48 hours, in violation of the requirement that he report any arrests within that period; and (2) he smelled of alcohol and had a measurable amount of alcohol in his system, in violation of the requirement that he abstain from using alcohol. The Department further alleged Clemente violated the probation terms and conditions requiring him to participate in cognitive and behavioral counseling and educational programming, to complete a 52-week course on anger management, and to perform 150 hours of community service. The Department asked the trial court to revoke probation and to sentence Clemente to prison for "the Upper Term" of four years. (Bolding omitted.)

At the arraignment on the petition, the trial court summarily revoked probation and set the matter for a formal revocation hearing.

At the hearing, California Highway Patrol (CHP) Officer Joel Hilfiker testified about the June 12, 2020 traffic incident involving Clemente. On that date, Hilfiker arrived at the scene of a reported collision and found a pickup truck with major damage and a power pole sheared off at its base. The power pole belonged to the county irrigation district. The driver of the truck was not there. About two hours after arriving at the scene, Hilfiker received a telephone call from a CHP dispatcher that the driver might be at a nearby business establishment. Hilfiker went to the establishment and

---

[1] An ignition interlock device "allow[s] a vehicle ignition switch to start the engine when the breath alcohol concentration test result is below the alcohol setpoint, while locking the ignition when the breath test results [*sic*] is at or above the alcohol setpoint." (Cal. Code Regs., tit. 13, § 125.00, subd. (a).)

3

found Clemente, who said that he saw an object in the road as he was driving, unsuccessfully tried to avoid collision with the object, lost control of the truck, and crashed into the power pole. Clemente said he left the scene of the collision because he "was trying to get help" and "was scared of law enforcement." Hilfiker noticed a "mild odor of an alcoholic beverage" emanating from Clemente and asked whether he had been drinking. Clemente responded, "No." Hilfiker then administered a preliminary alcohol screening test, which reported a blood alcohol content greater than 0.01 percent. Hilfiker ran Clemente's record with the Department of Motor Vehicles and discovered that Clemente was required to have an ignition interlock device in his vehicle. The truck that Clemente had crashed into the power pole belonged to his father and had no such device. Hilfiker did not issue Clemente a citation at that time and allowed him to leave with his father, who had arrived to pick him up.

Another witness at the hearing was Carlos Contreras, an employee of GEO Reentry Services (GEO), which provides courses on substance abuse, anger management, parenting, and cognitive behavior to individuals on probation. Contreras testified that Clemente had been referred to GEO to complete substance abuse group sessions on September 11, 2020, but "was dropped as an abscond" after he failed to attend a session for more than 10 consecutive days. On March 3, 2021, GEO notified Clemente's probation officer that Clemente had been terminated from the program. To Contreras's knowledge, Clemente did not try to reenroll in the program.

Clemente's probation officer, Julio Coronel, also testified at the revocation hearing. Coronel testified he had received a letter from the provider of the anger management classes that Clemente had been terminated for nonattendance. Coronel received a similar letter from GEO

4

about Clemente's termination from the substance abuse classes. Coronel had no record that Clemente completed any hours of community service. Clemente did not tell Coronel that he (Clemente) had reenrolled in anger management or substance abuse classes, but a letter from the provider of the anger management classes stated he had reenrolled. Coronel testified that probationers must report any contact with law enforcement, not just arrests, to their probation officers, but Clemente never told him about the June 12, 2020 traffic incident.

After hearing argument from counsel, the trial court announced its findings. The court stated that ever since Clemente was granted probation, he had "done absolutely nothing to comply with the terms of probation." The court noted the hit-and-run driving charge was still pending and found by a preponderance of the evidence that Clemente committed the offense, which the court described as "just one of a number of violations." The trial court further found Clemente "made no effort to comply with the terms of the GEO program, with no excuse." The trial court stated that although Clemente had three years to complete the requirements, he did not complete the substance abuse or anger management classes and did no community service. The court therefore found Clemente violated the terms and conditions of probation and set the matter for sentencing.

C. *Sentencing Hearing*

At the sentencing hearing, Clemente's counsel offered documents that purportedly showed Clemente had completed his 150 hours of community service. The probation officer told the trial court that Clemente had not notified the Department about the community service, and one of the organizations at which he served was not on the Department's list of approved organizations. Clemente admitted he had neither notified his

5

probation officer about the community service at the unapproved organization nor provided the officer any documentation of such service.

Clemente submitted character reference letters from an employer and a school superintendent. He and his parents made statements on his behalf, and his counsel urged the court to reinstate probation.

The prosecutor disputed the truth of the documents Clemente offered to prove performance of the required community service. The prosecutor also briefly discussed Clemente's multiple violations of the terms and conditions of probation, which the prosecutor argued showed Clemente's unsuitability for continued probation.

The trial court considered the character reference letters and the statements of Clemente and his parents, and reviewed his criminal record from the probation officer's report, which included four felonies and 10 misdemeanors. The court stated:

"The record shows a frequency and pattern of criminal conduct that's gone unabated. His prior performance has been poor, given by the number of violations. . . . [I]n the three [prior] felony cases where he was placed on probation, his performance on probation was unsatisfactory. He had repeated violations of probation even earlier . . . . It doesn't appear that he's willing to comply with the terms of probation, especially with the domestic violence, where he knows clearly what he has to do. There's no indication that he has any remorse; reviewing the initial report from this case, when he was sentenced originally, in June of 2018, he told the probation officer he did nothing wrong. So all the factors of the defendant militate against reinstatement on probation. His record is one of both violence, domestic violence, and alcohol. And the consistent pattern in his record is that he has not complied with probation and that he's picking up new offenses over and over and over again. And again, this is the fourth . . . felony conviction. In spite of, I'm sure, him being lectured by the court before, by his counsel, that he had to complete the terms of probation, he still didn't do it; he's been on

6

probation for almost three years and hasn't even completed the basic conditions of probation."

The trial court found "the factors in aggravation outweigh[ed] those in mitigation," terminated probation, and sentenced Clemente to prison for "four years, the upper term."

## II.

## DISCUSSION

Clemente contends the trial court abused its discretion by revoking probation because no substantial evidence supports its finding he had done " 'absolutely nothing' " to comply with the terms and conditions of probation. He also contends recent legislation limiting a court's authority to impose an upper-term prison sentence (Senate Bill No. 567) applies retroactively to his case and entitles him to a resentencing hearing. The People respond there was substantial evidence that Clemente violated multiple terms and conditions of probation and the trial court therefore properly revoked probation. The People agree Senate Bill No. 567 applies retroactively to Clemente's case, but argue no resentencing is required because this court can conclude beyond a reasonable doubt that a jury would have found at least one aggravating circumstance justifying imposition of an upper-term prison sentence had the issue been presented to the jury. As we shall explain, we agree with the People that sufficient evidence supports the trial court's revocation of probation, but disagree with the parties that Senate Bill No. 567 applies.

A.   *Revocation of Probation*

We first consider the trial court's decision to revoke probation. A trial court may revoke probation "if the interests of justice so require and the court, in its judgment, has reason to believe" the probationer has violated any of the terms and conditions of probation or has committed another offense.

7

(Pen. Code, § 1203.2, subd. (a).) The prosecutor must prove the facts supporting revocation by a preponderance of the evidence. (*People v. Rodriguez* (1990) 51 Cal.3d 437, 447 (*Rodriguez*); *People v. Buell* (2017) 16 Cal.App.5th 682, 687 (*Buell*).) On appeal, the court's factual findings are reviewed for substantial evidence and will be upheld if they are supported by evidence, whether contradicted or not, that is reasonable, credible, and of solid value, and by inferences reasonably drawn from the evidence. (*Buell*, at p. 687; *People v. Butcher* (2016) 247 Cal.App.4th 310, 318 (*Butcher*).) The ultimate decision to revoke probation is reviewed for abuse of discretion, which the party challenging the decision has the burden to establish. (*Rodriguez*, at p. 445; *People v. Kingston* (2019) 41 Cal.App.5th 272, 278 (*Kingston*); *People v. Urke* (2011) 197 Cal.App.4th 766, 773.) Clemente has not met his burden.

Clemente first contends the order revoking probation must be reversed because the evidence does not support the trial court's "finding" that he had done " 'absolutely nothing to comply with the terms of probation.' " This contention is based on a mischaracterization of the record. Although the court made the quoted statement at the end of the formal revocation hearing, the statement was not a factual finding. Rather, the court used hyperbole to express dissatisfaction with Clemente's failure to complete several of the basic requirements of probation even though he had nearly three years to do so. Soon after the court made the hyperbolic remark, it listed several specific ways in which Clemente had failed to comply with probation requirements. The court mentioned Clemente had attended some anger management classes but failed to complete the required 52-week program, which was supposed to be completed within 18 months of the grant of probation by attending weekly classes (Pen. Code, § 1203.097, subd. (a)(6)). The court also

8

mentioned Clemente's failure to complete the required GEO sessions on substance abuse and failure to perform any of the required 150 hours of community service. These comments about Clemente's specific compliance failures, not the preceding remark that he had done "absolutely nothing to comply," are the trial court's factual findings on the violations of the terms and conditions of probation. The court could find it was more likely than not that the specified violations occurred based on the evidence presented at the revocation hearing. (See *People v. Arriaga* (2014) 58 Cal.4th 950, 962-963 [preponderance means fact is more likely true than not true]; *Rodriguez, supra*, 51 Cal.3d at p. 447 [preponderance standard applies to proof of facts supporting probation revocation].) Coronel testified he had no record of any community service by Clemente and had received notices that he had been terminated from the anger management and substance abuse programs. Contreras testified Clemente had been terminated from the substance abuse program. Hence, substantial evidence supported the trial court's findings on these violations.

Clemente complains that in finding the violations discussed above, the trial court ignored the evidence showing his partial compliance with the community service and behavioral counseling and educational programming requirements, and improperly focused on the classes he missed and his failure to complete the requirements in the nearly three years he had been on probation. By his own account, however, Clemente was not complying. He admits he failed to attend the anger management classes weekly and was terminated for nonattendance. Clemente admits he was terminated from the GEO substance abuse program for missing too many classes in a row. He admits that at the formal revocation hearing he presented no evidence of performance of community service. The documents Clemente belatedly

9

offered at the sentencing hearing to prove performance included 121 hours at an unapproved organization about which he admitted he never told his probation officer. The trial court reasonably could find such halfhearted efforts to fulfill the terms and conditions of probation were not the good faith and diligence the court could demand from a felon to whom it had shown mercy in the hope of his rehabilitation. (See, e.g., *Charles S. v. Superior Court* (1982) 32 Cal.3d 741, 751 [probationer "may be required to make a good-faith search for employment in order to make reparation"]; *People v. Johnson* (1955) 134 Cal.App.2d 140, 143 [granting probation is "act of clemency" whose "obvious purpose is to secure law compliance through an attempt at helpful cooperation rather than by coercion or punishment"].)

The community service and behavioral counseling and educational programming requirements were not the only terms and conditions of probation the trial court found Clemente had violated. The court also found he violated the requirement that he obey all laws when he committed a hit-and-run offense on June 12, 2020. Hilfiker's testimony at the revocation hearing provided substantial evidence to support the finding. Hilfiker discovered a damaged and unattended truck near a power pole sheared off at its base, and when he located Clemente at a nearby business establishment, Clemente admitted crashing the truck into the pole and leaving the scene out of fear of law enforcement. (See Veh. Code, § 20002, subd. (a) [defining offense]; *People v. Carbajal* (1995) 10 Cal.4th 1114, 1123, fn. 10 [listing elements of offense].)

Clemente disputes the court's finding on the hit-and-run offense by claiming that at the revocation hearing he "presented evidence that he walked across a field to get help, not run away." His failure to provide any record citation to support this claim would allow us to pass it without

10

consideration. (Cal. Rules of Court, rules 8.204(a)(1)(C), 8.360(a); *People v. Wilson* (1965) 238 Cal.App.2d 447, 464.) We nevertheless reviewed the record, and the only evidence we found pertinent to this claim was Hilfiker's testimony that Clemente said he left the truck after crashing it into the pole because "he was trying to get help" and "was scared of law enforcement." Although the trial court could have inferred from the testimony that Clemente left the truck to locate the owner of the damaged power pole or to report the accident to law enforcement, the court also could have inferred he left to avoid detection. Since the latter inference supports the trial court's finding, that is the one we must draw. (See *Buell*, *supra*, 16 Cal.App.5th at p. 687 [appellate court reviewing order revoking probation must resolve all inferences and evidentiary conflicts in favor of trial court's decision].)

In finding Clemente committed the hit-and-run offense, the court also stated, "That's just one of a number of violations." Although it is unclear to what other violations the court was referring, the petition for revocation alleged others arising out of the hit-and-run incident. Specifically, the petition alleged Clemente violated the terms and conditions requiring him to report any arrests to his probation officer within 48 hours and to abstain from alcoholic beverages. We agree with Clemente he did not violate the reporting requirement, because Hilfiker did not arrest Clemente for the hit-and-run offense and instead told him "he was free to leave as his father was on scene waiting for him." (See Pen. Code, § 834 ["An arrest is taking a person into custody"].) Clemente concedes, however, the evidence that he drove with a measurable amount of alcohol in his system sufficed to establish a violation of the terms and conditions of probation prohibiting alcohol use. We accept the concession and conclude the evidence adequately established multiple violations of the terms and conditions of probation.

The next question is whether the trial court abused its discretion by revoking probation based on the violations it found. It did not. "A court abuses its discretion 'whenever the court exceeds the bounds of reason, all of the circumstances being considered.' " (*People v. Downey* (2000) 82 Cal.App.4th 899, 909 (*Downey*); accord, *Kingston*, *supra*, 41 Cal.App.5th at p. 278.) Our Supreme Court has cautioned that "only in a very extreme case should an appellate court interfere with the discretion of the trial court in the matter of denying or revoking probation." (*People v. Lippner* (1933) 219 Cal. 395, 400; accord, *Rodriguez, supra*, 51 Cal.3d at p. 443.) This is not such a case. The trial court found multiple violations of the terms and conditions of probation, including the failure to perform community service, the failure to complete anger management and substance abuse classes, and the commission of a new offense. As we have discussed, substantial evidence supports the findings. In addition, Clemente concedes he violated the terms and conditions prohibiting alcohol use. Where, as here, "the record reveals that a defendant's violation of the terms of probation was the result of irresponsible or willful behavior, termination of probation and imposition of a prison sentence is no abuse of discretion." (*Kingston*, at p. 278; see Pen. Code, § 1203.2, subd. (a) [court may revoke probation if it has reason to believe probationer violated terms and conditions of probation or committed new offense]; *Butcher, supra*, 247 Cal.App.4th at p. 318 [no abuse of discretion in revoking probation when probationer committed another crime].)

Clemente nevertheless argues the trial court abused its discretion and urges us to reverse the judgment and to remand the matter for resentencing. We must grant such relief, he says, because he did not suffer any new

"convictions" while on probation and the court relied on some probation violations that were not supported by the evidence. We are not persuaded.

A conviction of a new offense is not required for a court to revoke probation granted on a prior offense. (*In re Coughlin* (1976) 16 Cal.3d 52, 56; *People v. Vanella* (1968) 265 Cal.App.2d 463, 469.) "A court is justified in revoking probation even though the circumstances would not warrant a conviction." (*People v. Hayko* (1970) 7 Cal.App.3d 604, 609.) To revoke probation, the court need only find by a preponderance of the evidence that the defendant committed a new offense. (Pen. Code, § 1203.2, subd. (a); *Rodriguez*, *supra*, 51 Cal.3d at p. 447.) As we have explained, the trial court properly did that here.

Nor is reversal and remand required by *People v. Self* (1991) 233 Cal.App.3d 414, the only case Clemente cites in support of his request for such relief. In *Self*, the trial court found three violations of the terms and conditions of probation, revoked probation, and sentenced the defendant to prison. (*Id*. at p. 416.) The Court of Appeal ruled only one of the violations could support revocation, but it could not conclude from the record that the trial court would have revoked probation and sentenced the defendant to prison based on that violation alone. (*Id*. at p. 419.) The Court of Appeal therefore reversed the judgment and remanded the matter for resentencing. (*Ibid*.) This case is not comparable to *Self*. The trial court here expressly found multiple violations of the terms and conditions of probation, including failure to perform community service, failure to complete anger management and substance abuse classes, and commission of a hit-and-run offense. We have determined the evidence presented at the formal revocation hearing sufficed to support all of those findings. The only violation alleged in the petition for revocation for which the evidence was insufficient was that by

13

failing to report the hit-and-run incident to his probation officer Clemente violated the requirement that he report any arrest within 48 hours. Although the trial court referred to "a number of violations" related to the hit-and-run incident, it did not specify the failure to report the incident as one of them. Based on the violations the court did specify, its decision to revoke probation was not "so irrational or arbitrary that no reasonable person could agree with it" and thus was not an abuse of discretion. (*People v. Carmony* (2004) 33 Cal.4th 367, 377.) "In the absence of any showing that the court's decision was arbitrary or capricious, we will uphold it on appeal." (*Downey*, *supra*, 82 Cal.App.4th at p. 910.)

B.      *Applicability of Senate Bill No. 567*

We next consider whether Senate Bill No. 567 applies and requires remand for resentencing. Effective January 1, 2022, while Clemente's appeal was pending, Senate Bill No. 567 amended Penal Code section 1170 in several ways. (See *People v. Flores* (2022) 73 Cal.App.5th 1032, 1038 [describing amendments].) As relevant here, the statute now provides: "The court may impose a sentence exceeding the middle term only when there are circumstances in aggravation of the crime that justify the imposition of a term of imprisonment exceeding the middle term, and the facts underlying those circumstances have been stipulated to by the defendant, or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial." (Pen. Code, § 1170, subd. (b)(2), as amended by Stats. 2021, ch. 731, § 1.3.) The amended statute thus makes the middle term the presumptive prison sentence and allows imposition of an upper-term sentence only if the defendant has admitted or the factfinder has found the facts underlying aggravating circumstances. (*People v. Whitmore* (2022) 80 Cal.App.5th 116, 131.) Appellate courts have applied Senate Bill No. 567 to

14

cases not yet final as of January 1, 2022, and vacated sentences and remanded for resentencing when trial courts had imposed upper-term sentences based on aggravating circumstances neither found by the jury nor admitted by the defendant. (*People v. Lopez* (2022) 78 Cal.App.5th 459, 465, 469; *People v. Garcia* (2022) 76 Cal.App.5th 887, 902-903.) No such relief is warranted in this case, however.

Clemente's claim of entitlement to a remand for resentencing is based on the false premise that the trial court imposed an upper-term prison sentence. It did not. The prison terms prescribed as punishment for infliction of corporal injury on a cohabitant with a prior conviction within seven years have been two, four, or five years ever since they were added to the statute in 1999. (Pen. Code, § 273.5, subd. (f)(1), as most recently amended by Stats. 2016, ch. 50, § 69; former Pen. Code, § 273.5, subd. (e), as amended by Stats. 1999, ch. 662, § 9.5.) The trial court sentenced Clemente to prison for four years, which is the middle term and the presumptive sentence under Senate Bill No. 567. Although in recommending a four-year prison term the probation officer described it as the upper term in his report and the trial court described it the same way in imposing that term at the sentencing hearing, these descriptions were in error. The parties have made the same error in their briefs on appeal. Because the trial court did not impose an upper-term prison sentence, although it apparently thought it was doing so, and actually imposed the presumptive middle-term sentence as prescribed by Senate Bill No. 567, we need not vacate the sentence and remand the matter for resentencing. (See *People v. Turner* (2020) 10 Cal.5th 786, 807 [legally correct ruling will not be disturbed on appeal merely because made for wrong reason].)

## III.

## DISPOSITION

The judgment is affirmed.

IRION, J.

WE CONCUR:


O'ROURKE, Acting P. J.


BUCHANAN, J.

16