Filed 4/27/26  P. v. Jeong CA2/5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br>v.<br><br>ANDREW JEONG,<br><br>  Defendant and Appellant. | B339210<br><br>(Los Angeles County<br>Super. Ct. No.23SFCF00120) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Bernie C. LaForteza, Judge.  Reversed and remanded with directions.

Debbie Yen, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Scott A. Taryle and Daniel C. Chang, Deputy Attorneys General, for Plaintiff and Respondent.

After the trial court denied defendant and appellant Andrew Jeong's motion for pretrial mental health diversion (Pen. Code,[1] § 1001.36), he pleaded no contest to one count of violating a domestic relations court order with violence and prior conviction (§ 273.6, subd. (d), count 1) and one count of criminal threats (§ 422, count 2). The trial court placed Jeong on formal probation for two years and ordered Jeong to serve 360 days in county jail with credit for time served.

On appeal, Jeong contends the trial court abused its discretion by denying his pre-plea motion for mental health diversion because he presented an unreasonable risk of danger to public safety. Jeong argues there was insufficient evidence to support the trial court's finding. The People assert that substantial evidence supports the court's public safety finding and additionally argue that Jeong's proposed mental health treatment plan was inadequate to meet his needs.

We conclude that there is insufficient evidence to support the trial court's danger to public safety finding. We reverse the judgment and remand the cause for the court to conduct further proceedings consistent with this opinion, including an evaluation of the adequacy of the proposed mental health treatment plan.

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

# BACKGROUND

## A.     *Prior Misdemeanor Convictions*

Prior to committing the current offenses, Jeong suffered three misdemeanor convictions, as follows:  (1) in 2008, Jeong was convicted of vandalism (§ 594, subd. (a)), for which he was placed on misdemeanor probation; (2) in 2015, Jeong was convicted of driving with a blood alcohol content of 0.08 percent or greater (Veh. Code, § 23152, subd. (b)), for which he was placed on misdemeanor probation; and (3) in 2020, Jeong was convicted of intentional and knowing violation of a protective order and an outstanding warrant (§ 273.6, subd. (a)), for which he was again placed on misdemeanor probation.

Jeong's 2020 conviction concerned a protective order obtained by his brother, Peter.  Police responded to several incidents at the family home in 2020.  On February 14, 2020, police responded to a family dispute in which Jeong threatened to kill Peter.  The family told police they were concerned that Jeong was suffering from drug addiction.  Officers advised the family of available resources.  On February 28, 2020, police responded to a report that Jeong had violated a restraining order by entering the family home.  Officers served Jeong with the restraining order and escorted him off the property.  On March 4, 2020, police responded to a report concerning a verbal argument between Jeong and Peter.  Jeong left before officers arrived.  On May 3, 2020, police responded to a report that Jeong pushed Peter and his mother.  The family declined to make a report, but stated they would call back if necessary.

**B.**    *Past Incidents Involving the Victim in This Case*

**1.    June 8, 2023**

On June 8, 2023, Jeong's neighbor Donald Cooper was inside his home when Jeong walked up and banged on Cooper's front door.  Jeong demanded that Cooper come outside and fight him.  Cooper remained inside.  Jeong then walked to Cooper's truck and repeatedly threw his shoe at the passenger side fender. Jeong went home, and Cooper called the police.

Cooper told police that he believed Jeong suffered from mental illness.  Cooper said that officers had responded to Jeong's residence in the past and that Jeong was "known to be aggressive and combative with officers."  One of the responding officers conducted a mental evaluation of Jeong and determined that Jeong did not meet the criteria to be detained for a mental health evaluation and treatment pursuant to Welfare and Institutions Code section 5150.  The officers again spoke with Cooper and advised him that if they attempted to detain Jeong it would likely result in harm to Jeong or to officers.  Cooper agreed that making a police report would suffice.  Police then conducted a vandalism investigation and observed a minor dent to the front passenger fender of Cooper's vehicle.  Cooper estimated that it would cost between $1,000 and $1,500 to repair the damage.

Cooper obtained a restraining order against Jeong that was valid through August 2, 2026.

### 2.     August 29, 2023

On August 29, 2023, Cooper was inside his home when he heard someone hitting his vehicle with an unidentified object. Cooper looked out of his window and saw Jeong standing near his vehicle. Cooper then saw Jeong climb over his front wall. Jeong, who was still holding the object, stood approximately 20 feet away from Cooper's house and yelled profanities at Cooper. Cooper called the police.

When police arrived, Jeong was sitting in his own front yard. Jeong was uncooperative and yelled at the officers. Jeong told officers that he had had trouble with Cooper for 22 years, but then stated that he had only lived at his current residence for four years. Jeong disobeyed the officers' orders and went into his home to use the restroom. Jeong refused to come outside and refused to open the gate. The officers "tactically disengage[d]" after several "call outs." Officers observed that Jeong "appeared to suffer from an unknown mental illness."

## C.     *The Current Offenses*

On December 6, 2023, Cooper parked his truck on the street near his house and was sitting in the driver's seat. Jeong suddenly approached and aggressively hit Cooper's truck with his hands. Jeong yelled threats at Cooper, stating that he would beat Cooper and that he would kill him. Cooper fled the area in his vehicle and contacted police.

Cooper explained to officers that he believed Jeong could carry out the threat to kill, and that he had previous similar

encounters with Jeong, which had led him to obtain a restraining order against Jeong. Officers discovered that Jeong had a misdemeanor warrant for a court violation.[2] They approached Jeong's home and "conducted a call out to gain [Jeong's] compliance." Jeong immediately exited the house and was taken into custody without incident. Officers arrested Jeong for violation of a court order/misdemeanor warrant (§ 273.6, subd. (d)), but decided not to arrest Jeong for criminal threats (§ 422) because the threats Jeong made against Cooper were vague, and Jeong did not have the means to carry out the threats when he made them.

A felony complaint filed on December 8, 2023, alleged that Jeong violated a court order with violence and a prior conviction (§ 273.6, subd. (d)) and made criminal threats (§ 422).

## PROCEDURAL HISTORY

### A. *Jeong's Motion for Mental Health Diversion*

On April 2, 2024, Jeong filed a motion requesting mental health diversion pursuant to sections 1001.35 and 1001.36. Jeong argued that he was eligible for relief because he was diagnosed with schizophrenia and substance abuse disorder, which played a significant role in his commission of the crimes. Dr. Anne L. Walker, who evaluated Jeong, concluded that the symptoms of Jeong's mental illness led to his criminal conduct. Dr. Walker opined that Jeong would respond to mental health

---

[2] The misdemeanor warrant related to the 2020 conviction for violation of the protective order obtained by Peter. (§ 273.6, subd. (a).)

6

services and treatment. Jeong consented to diversion, waived his right to a speedy trial, and agreed to comply with treatment as a condition of diversion. Jeong asserted that he did not pose an unreasonable risk of danger to public safety because there was not an unreasonable risk that he would commit a "super strike,"[3] as he has no prior felony convictions and the pending charges were not super strikes. Jeong had available to him a treatment plan that would meet his specialized needs.

The psychological evaluation report of Dr. Walker was attached to the motion. The report stated that Jeong was cooperative, compliant, and oriented in all spheres. Jeong maintained good eye contact with the doctor and formed a good rapport with her, but his speech was pressure and his thinking was "confused, disorganized and tangential." Jeong reported paranoid delusional ideation and stated that he believed people were disrespectful to him and wanted to harm him. He reported alcohol abuse prior to committing the current offenses. Jeong

---

[3] " 'As used throughout th[e] [Penal] Code, "unreasonable risk of danger to public safety" means an unreasonable risk that the petitioner will commit a new violent felony within the meaning of' section 667, subdivision (e)(2)(C)(iv).' " (*People v. Valencia* (2017) 3 Cal.5th 347, 351.) Section 667, subdivision (e)(2)(C)(iv) enumerates "particularly serious or violent felonies, known colloquially as 'super strikes.' " (*Ibid*.) Super strikes include "any homicide offense, solicitation to commit murder, assault with a machinegun on a police officer or firefighter, possession of a weapon of mass destruction, or any serious or violent felony punishable by life imprisonment or death." (*Sarmiento v. Superior Court* (2024) 98 Cal.App.5th 882, 892, fn. 4.)

stated that he was not taking psychoactive medication prior to the current offenses.

Dr. Walker administered to Jeong the Structured Clinical Interview for DSM 5 Diagnosis—Clinician Version. The results indicated a diagnosis of schizophrenia. Dr. Walker tested Jeong for psychopathology. "Test results indicated *no* evidence of psychopathology." (Italics in original.) Dr. Walker concluded that Jeong is capable of learning from his mistakes. Dr. Walker also administered the Violence Appraisal Guide. Jeong performed in the low risk range. Jeong's scores indicated an eight percent chance of recidivism over seven years and a 10 percent chance of recidivism over 10 years.

Dr. Walker diagnosed Jeong with schizophrenia and severe alcohol use disorder. The doctor opined that schizophrenia played a significant role in Jeong's commission of the current offenses. Dr. Walker believed that Jeong's symptoms motivating his criminal behavior would respond to mental health treatment. The doctor recommended that Jeong receive psychiatric treatment and psychotherapy to address his schizophrenia, and that he receive substance abuse treatment to address his severe alcohol use disorder. She believed that Jeong was motivated and had a good prognosis for treatment. Dr. Walker concluded that Jeong posed a low risk for future violent behavior and a low risk for future dangerousness to the community. In Dr. Walker's opinion, Jeong did not present an unreasonable risk of danger to public safety as defined by section 1170.18. Dr. Walker opined that the recommended treatment would meet Jeong's specialized needs.

Also attached to the motion was a letter approving Jeong's participation in the Salvation Army Adult Rehabilitation Center,

subject to drug and alcohol testing, identity verification, and bed availability. The letter detailed the treatment that Jeong would receive and specified that Jeong would not be permitted to leave the facility for the first 30 to 45 days of his participation. The residential rehabilitation was a six to 12 month program. The Los Angeles Police Department's reports of the incidents involving Cooper on August 29, 2023, and December 6, 2023; the restraining order relating to Cooper; and a record of Jeong's criminal history were attached to the motion as well.

## B. *The People's Opposition to the Motion for Mental Health Diversion*

On April 10, 2024, the People filed an opposition to the motion for mental health diversion. The People emphasized that Cooper lived across the street from Jeong and had already disobeyed the restraining order, which was in place at the time of the August 29, 2023 incident. The August 29, 2023 case involving Cooper had been submitted to the Los Angeles City Attorney's Office and was still pending. Additionally, Jeong had several prior misdemeanor convictions.[4]

The People argued that the court should not find Jeong suitable for mental health diversion because he posed an unreasonable risk of danger to public safety. Jeong had

---

[4] The People stated that Jeong had suffered a 2023 conviction for reckless driving (Veh. Code, § 23103, subd. (a)) that was allegedly included in Jeong's Pretrial Services Bureau Pretrial Report dated December 8, 2023, but was not listed in the Probation Officer's Report dated February 14, 2024. The People provided no evidence of the conviction.

9

continually harassed Cooper, who he targeted for an unknown reason. The People asserted that Jeong's conduct was escalating, and that Jeong was likely to follow through on his threat to kill Cooper.

The People further argued that the proposed treatment program was insufficient. The rehabilitation center was not a lock-down facility. Jeong could leave at any time and attack Cooper. Jeong had access to Cooper because he knew where Cooper lived. Jeong's unpredictability and dangerousness were also evidenced by police logs relating to incidents Jeong had with his brother, Peter. Peter had obtained a restraining order against Jeong. Jeong had also violated that restraining order, resulting in Jeong's 2020 section 273.6, subdivision (a) conviction.

Finally, the People urged the trial court to exercise its residual discretion to find Jeong unsuitable for mental health diversion based on Jeong's history of ignoring court orders. Jeong was on probation for both his 2020 section 273.6, subdivision (a) conviction and his 2023 Vehicle Code section 23103, subdivision (a) conviction when he committed the current offenses.[5]

Attached to the opposition were: police reports of all three incidents involving Cooper; Los Angeles Police Department Incident Recall Reports relating to incidents involving Peter; and a police report of Jeong's March 14, 2020 arrest for violating the restraining order protecting Peter.

## C.    *The Probation Report*

---

[5] As we noted above, the People provided no evidence of this conviction. The trial court did not mention it in the court's denial of the motion for mental health diversion.

A probation report prepared on February 14, 2024, contained a summary of Cooper's February 7, 2024 telephonic statement to the probation officer as follows: Cooper stated that he was in fear for his life during the commission of the December 6, 2023 offenses. Cooper was not injured, but his truck sustained $4,500 in damages and he lost $2,000 in wages. Cooper was in therapy. His wife moved out of their home because she feared Jeong. Cooper stated Jeong is a danger to the community and has set fires in his own yard. Cooper wanted Jeong to be relocated until a doctor certifies that he is fit to live in society.

**D.      *Hearing on the Motion for Mental Health Diversion***

On April 12, 2024, the court held a hearing on Jeong's mental health diversion motion. The prosecutor stated that he wanted to bring to the court's attention "a paragraph which is a memorialization of victim Cooper's statement to us" that contained details not included in the probation report. The prosecutor relayed the following, based on the notes of Cooper's statement:

"So Mr. Cooper has stated that he believes the defendant has violated the restraining order at least twice and that the defendant has been a nuisance to the neighborhood for at least two years. Mr. Cooper is very concerned that the defendant will harm or kill him. Mr. Cooper said that a neighbor told him, Mr. Cooper, that the defendant chased that neighbor around with a large knife. He said that he, Mr. Cooper, has witnessed the defendant setting little fires in the defendant's backyard, and that Mr. Cooper has also witnessed the defendant with a mop-like stick, holding it up, and the mop had some type of accelerant

11

that the defendant set on fire. Mr. Cooper also believed that the defendant would try to set a house on fire. He said that—Mr. Cooper said that he has heard the defendant's mother scream several times, he believes because of the defendant, and usually the police would come to the defendant's house after that. Mr. Cooper also thinks that the real issues with the defendant began when the defendant's brother left the home. Mr. Cooper believed that the defendant's brother kept the defendant in check. Mr. Cooper stated that he spoke to the brother, the defendant's brother, a couple of times, and that the defendant's brother told him, Mr. Cooper, that they, the defendant's family, were trying to get the defendant conserved. The brother also told Mr. Cooper to call him, the brother, if the defendant threatened him again." The prosecutor submitted on his oral summary of the notes of Cooper's statement and the written opposition.[6]

---

[6] On November 14, 2025, the People filed with this court a request that we take judicial notice of a "one-paragraph statement made by the victim in this case, Donald Cooper." The People averred that "[t]his record is relevant to this appeal because the prosecutor read the contents of Cooper's statement to the superior court during the hearing on appellant's motion for pretrial mental health diversion." The People claim that we may take judicial notice of the proffered statement pursuant to Evidence Code sections 452, subdivision (d) and 459, and California Rules of Court, rule 8.252 (a).

Evidence Code section 459, subdivision (a), grants this court discretion to take judicial notice "of any matter specified in Section 452." The People assert that the proffered statement is admissible pursuant to Evidence Code section 452, subdivision (d), which permits us to take judicial notice of "[r]ecords of (1) any court of this state or (2) any court of record of the United States or of any state of the United States." The People do not explain

12

Defense counsel acknowledged that the rules of evidence are relaxed in a mental health diversion proceeding, but argued that Cooper's statements, even if genuine, were "steeped in speculation, and a couple of the more specific allegations are based on multiple layers of hearsay. . . ." The court stated that the multiple levels of hearsay would impact the weight that the court would give the evidence. Defense counsel finally argued that all of the evidence supported the conclusion Jeong suffered from mental illness that required treatment that custody would not provide. The Legislature had expressed a preference for mental health diversion in such a situation.

---

why we should deem the proffered statement to be a record of the trial court, and we can discern none. The statement is not included in the record on appeal and the trial court did not take judicial notice of the statement. Indeed, the statement was not provided to the trial court, and the court specifically stated at the hearing that the court had not reviewed it. The prosecutor did not read the statement into the record verbatim—he summarized the statement and omitted information contained therein. The statement cannot reasonably be treated as a record of the court. The evidence, such that it was, was the representation made by the prosecutor in argument. We decline to take judicial notice of the People's proffered statement on this basis.

Alternatively, we note that pursuant to Rules of Court, rule 8.252, subdivision (a)(2)(C), the People were required to disclose in their motion that the trial court did not take judicial notice of the proffered statement and to explain why the statement was subject to judicial notice under Evidence Code section 452, subdivision (d). This information was not included in the motion, and is an independent basis for our denial. For all of the foregoing reasons, the People's November 14, 2025 request for judicial notice is denied.

13

The prosecutor responded that he did not doubt Jeong suffered from a mental disorder, but argued that the People opposed mental health diversion because Jeong presented an unreasonable risk of committing a super strike and the proposed treatment program was insufficient—treatment should last longer, be more restrictive, and be greater in scope.

Defense counsel replied that the treatment program was a proposal by the defense that the court was free to accept or modify as the court saw fit. Counsel argued that the suitability of treatment is a separate issue from whether an individual is eligible and suitable for pretrial diversion under the statutory language.

The court took the matter under submission, explaining that it needed more time to consider the issue of public safety. The court addressed Jeong: "[I]t is not an easy decision to make because the decision I make is a dispositive motion in a sense. If you don't know what that means, that means if I grant your motion, if you complete your mental health diversion then you will earn a dismissal after a certain time period and this won't be on your record, and so the People have no chance to refile it. So it is a significant motion. And the Legislature has informed the courts that it is their intent that we grant these motions to help defendants with mental health issues, but the Legislature has also given courts discretion to make sure that if we make that decision a defendant does not harm the public."

E.    *The Trial Court's Ruling on the Motion for Mental Health Diversion*

14

On April 18, 2024, the court held a hearing to rule on the motion for mental health diversion. The court stated that the issue as the court viewed it was suitability, and specifically the issue of public safety risk. The court found that Jeong met the eligibility requirements of section 1001.36, subdivision (b)(1), but denied mental health diversion, stating:

"[T]he court's foremost duty is to safeguard the public from the risk of harm. Given the defendant's history of violence and criminal behavior, there are substantial concerns regarding the potential harm to the public if the defendant were to be released from [sic] treatment. The court finds defendant is likely to commit a super strike, murder."

In support of its finding, the court first cited to the circumstances of the charged offenses and the prior incidents involving Cooper, including that: (1) Jeong threatened to kill Cooper in December 2023; (2) Jeong violated the restraining order in December 2023; (3) Jeong threatened to harm Cooper in August 2023; (4) Cooper suffered financial damages as a result of the charged offenses (vehicle repairs and lost wages); (5) Cooper feared for his safety (as evidenced by the fact that Cooper and his wife moved out of their residence, and Cooper started going to therapy); (6) Cooper observed Jeong lighting fires in his yard; (7) Cooper believed that Jeong had been a nuisance to the neighborhood for two years and that Jeong would light a house on fire; (8) Jeong "has chased a neighbor around with a large knife"; and (9) Cooper heard Jeong's mother screaming, which was followed by the arrival of police.

Second, the court found compelling that when Jeong committed the current offenses, he was on misdemeanor probation for violating the 2020 protective order relating to Peter.

15

The restraining order violation was on bench warrant status in 2021. Jeong was arrested on the bench warrant on April 20, 2023, and pled no contest. The matter was currently in bench warrant status because Jeong failed to show enrollment and progress in domestic violence counseling.

The court emphasized: "The court acknowledges that mental health treatment as opposed to incarceration is mandated by law, but also recognizes the discretion vested in judges to assess the suitability of individuals for such treatment. Based on the information presented, it is unlikely that defendant would comply with the legal obligation if released for treatment, thereby posing a significant risk to public safety."

## F.   *Jeong's No Contest Plea and Sentencing*

On June 3, 2024, Jeong came before the court on the probation violation relating to his 2020 misdemeanor restraining order violation, and on the current offenses involving Cooper.

Pursuant to a plea agreement, Jeong admitted the probation violation in the misdemeanor case, and the court immediately terminated probation. With respect to the current offenses, Jeong pleaded no contest to violating section 273.6, subdivision (d), and section 422. The court sentenced Jeong to 360 days in county jail with credit for time served, plus two years of probation, and released him. The court executed a five-year restraining order to protect Cooper. The court did not execute a restraining order relating to Peter because Jeong's family had stated that a restraining order was not necessary.

Jeong obtained a certificate of probable cause and timely appealed from the judgment.

16

## DISCUSSION

On appeal, Jeong contends the trial court's finding that there is an unreasonable risk he would commit a super strike— murder— if treated in the community is not supported by substantial evidence. The People argue that: (1) the trial court's public safety finding is supported by substantial evidence; and (2) Jeong's proposed treatment plan is insufficient to meet his needs. We agree with Jeong.

### A.    *Legal Framework of Mental Health Diversion*

"Section 1001.36 gives trial courts the discretion to grant pretrial diversion for individuals suffering from certain mental health disorders." (*People v. Frahs* (2020) 9 Cal.5th 618, 626.) The statute defines " 'pretrial diversion' " as "the postponement of prosecution, either temporarily or permanently, at any point in the judicial process from the point at which the accused is charged until adjudication, to allow the defendant to undergo mental health treatment." (§ 1001.36, subd. (f)(1).) The maximum period of diversion is two years. (*Id.*, subd. (f)(1)(C)(i).) If the defendant "perform[s] satisfactorily in diversion," then "at the end of the period of diversion, the court shall dismiss the defendant's criminal charges that were the subject of the criminal proceedings at the time of the initial diversion," and "the arrest upon which the diversion was based shall be deemed never to have occurred." (*Id.*, subd. (h).) The stated purpose of section

17

1001.36 "is to promote all of the following: [¶] (a) Increased diversion of individuals with mental disorders to mitigate the individuals' entry and reentry into the criminal justice system while protecting public safety. [¶] (b) Allowing local discretion and flexibility for counties in the development and implementation of diversion for individuals with mental disorders across a continuum of care settings. [¶] (c) Providing diversion that meets the unique mental health treatment and support needs of individuals with mental disorders." (§ 1001.35, subds. (a)–(c).)

"Effective January 1, 2023, mental health diversion requires trial court findings that the defendant is both *eligible* for diversion and *suitable* for the program. The criteria for each are specified in the statute. (§ 1001.36, subds. (b) & (c).) Defendants are eligible if they have been diagnosed with a recognized mental disorder that was a significant factor in the commission of the criminal offense with which they are charged. (*Id.*, subd. (b).) They are suitable if: (1) in the opinion of a qualified mental health expert, the defendant's mental disorder would respond to treatment; (2) the defendant agrees to waive their speedy trial rights; (3) the defendant agrees to comply with treatment requirements; and (4) the defendant will not pose an 'unreasonable risk of danger to public safety' as defined in sections 1170.18 and 667, subdivision (e)(2)(C)(iv). (§ 1001.36, subd. (c).)" (*Sarmiento v. Superior Court* (2024) 98 Cal.App.5th 882, 891 (*Sarmiento*).) Only the public safety suitability requirement necessitates a trial court finding. (*Id.* at p. 892.)

"Assuming the defendant is both eligible and suitable, the trial court must also be satisfied 'that the recommended inpatient or outpatient program of mental health treatment will meet the

specialized mental health treatment needs of the defendant.' (§ 1001.36, subd. (f)(1)(A)(i); see *People v. Gerson* (2022) 80 Cal.App.5th 1067, 1079 (*Gerson*).)  This is not an additional eligibility or suitability requirement the defendant must meet. Rather, subdivision (f)(1) of section 1001.36 read as a whole appears to contemplate an ongoing assessment to assure that defendants will receive appropriate treatment for their particular conditions as part of the diversion program."[7]  (*Sarmiento*, *supra*, 98 Cal.App.5th at p. 892, fn. omitted.)

"Finally, even where defendants make a prima facie showing that they meet all the express statutory requirements, the court may still exercise its discretion to deny diversion. (*Gerson*, *supra*, 80 Cal.App.5th at p. 1079; see also *People v. Qualkinbush* (2022) 79 Cal.App.5th 879, 888 (*Qualkinbush*).)  But this 'residual' discretion must be exercised ' "consistent with the principles and purpose of the governing law." ' (*Qualkinbush*, at p. 891, quoting *Wade v. Superior Court* (2019) 33 Cal.App.5th 694, 710; *People v. Williams* (2021) 63 Cal.App.5th 990, 1001 (*Williams*) [' "scope of discretion always resides in the particular law being applied" '].)  That purpose includes a strong legislative preference for treatment of mental health disorders because of the benefits of such treatment to both the offending individual and the community.  Where the court chooses to exercise this residual discretion to deny diversion, its statement of reasons

---

**7** "Subdivision (f)(1)(A)(ii) of section 1001.36 requires agreement of the proposed treatment entity to accept responsibility for treating the defendant.  Subdivision (f)(1)(A)(iii) allows a county mental health agency that believes it is unable to provide proper services to submit a written declaration to that effect." (*Sarmiento, supra*, 98 Cal.App.5th at p. 892, fn. 5.)

19

should reflect consideration of the underlying purposes of the statute and explain why diversion would not meet those goals. (*Qualkinbush*, at pp. 891–892.)" (*Sarmiento*, *supra*, 98 Cal.App.5th at pp. 892–893.)

"A trial court's ruling on a motion for mental health diversion is reviewed for an abuse of discretion, and factual findings are reviewed for substantial evidence. ([*People v.*]*Moine* [(2021)] 62 Cal.App.5th [440,] 449 [(*Moine*)]; *People v. Oneal* (2021) 64 Cal.App.5th 581, 588.) A trial court has 'broad discretion to determine whether a given defendant is a good candidate for mental health diversion.' (*People v. Curry* (2021) 62 Cal.App.5th 314, 324.) 'A court abuses its discretion when it makes an arbitrary or capricious decision by applying the wrong legal standard [citations], or bases its decision on express or implied factual findings that are not supported by substantial evidence.' (*Moine*, at p. 449; see *People v. Bunas* (2022) 79 Cal.App.5th 840, 848–849.)" (*People v. Whitmill* (2022) 86 Cal.App.5th 1138, 1147.)

**B.** *Analysis*

### 1. <u>Unreasonable Risk to Public Safety</u>

"[A]n ' "unreasonable risk . . . to public safety" ' means a likelihood that the defendant will commit one of the violent felonies specifically enumerated in [section 667, subdivision (e)(2)(C)(iv), also known as super strikes]. (*Williams*, *supra*, 63 Cal.App.5th at p. 1001; *Moine, supra,* 62 Cal.App.5th at p. 450 ['risk of danger is narrowly confined to the likelihood the defendant will commit a limited subset of violent felonies'].)"

20

(*Sarmiento, supra*, 98 Cal.App.5th at p. 892, fn. omitted.) "[B]y requiring the trial court to evaluate the 'risk' posed to public safety, the statutory language directs the court to perform a quintessential discretionary function. (See *People v. Frahs*, *supra*, 9 Cal.5th at p. 639 [noting that 'the Legislature left it to trial courts to make fact-specific evaluations of risk under [§] 1001.36, [subd.] (b)(1)(F)'].)" (*Moine, supra,* at p. 448.) We therefore review the trial court's public safety determination for abuse of discretion. (*Ibid*.) "A court abuses its discretion when it makes an arbitrary or capricious decision by applying the wrong legal standard [citations], or bases its decision on express or implied factual findings that are not supported by substantial evidence [citation])." (*Id*. at p. 449.)

Here, the court cited Jeong's history of violence and criminal behavior as a basis for its finding that there was a likelihood that Jeong would commit murder. However, none of Jeong's prior convictions are for a felony, let alone a serious or violent felony or a super strike. Jeong has never been arrested for violent behavior. The only instance in which Jeong allegedly touched another person in a violent manner was the incident on May 3, 2020, when police were called because Jeong pushed his brother and mother. There was no evidence that the pushes resulted in injury, and the family declined to make a report.

Jeong made violent threats on two occasions—he threatened to kill his brother Peter on February 14, 2020, and he threatened to kill Cooper in the commission of the current offenses on December 6, 2023.[8] But even assuming violent

---

[8] Although the trial court stated in its ruling that Jeong threatened to harm Cooper during the August 29, 2023 incident, this is not borne out in the record. Cooper told officers that Jeong

21

threats may be sufficient to support a finding that a defendant is likely to commit a super strike under some circumstances, the evidence does not rise to that level in this case. Despite his threat that he would kill Peter, there is no evidence that Jeong did more than engage in a verbal argument with his brother and push him once before or after making the threat. Moreover, there is no evidence that Jeong engaged in *any* confrontation with Peter after May 2020. Although the prosecution charged Jeong with criminal threats in the present case, the police report specifically states that the responding officers chose not to arrest Jeong for criminal threats because the officers determined that the threats were vague and that Jeong had no means of carrying them out when he made them. The circumstances support the officers' conclusion—Cooper was inside his vehicle and there is no evidence that Jeong had a weapon.

The court also relied on the circumstances of the charged offenses and the prior incidents involving Cooper. Although these incidents support a finding that Jeong would continue to harass Cooper, damage his property, or commit some other offense, these incidents do not constitute substantial evidence of a likelihood that Jeong would commit a super strike, and this is what section 1001.36 requires before a trial court may deny mental health diversion on the basis of an unreasonable risk to public safety. (*Williams*, *supra*, 63 Cal.App.5th at p. 1001; *Moine*, *supra*, 62 Cal.App.5th at p. 450.) Jeong did not physically touch

---

yelled obscenities at him, but Cooper "was unable to verify what was said."

Cooper in any of the incidents. Cooper was always inside his home or in his vehicle.[9]

Cooper's fear of Jeong and his beliefs regarding what Jeong might do were his personal opinion. They are not evidence of the likelihood that Jeong would commit a super strike. With respect to Cooper having observed Jeong light small fires in his yard, there was no evidence of Jeong's motivations or intentions for his actions. Moreover, there was no evidence connecting Jeong's activity to threats of harm to people or property, and no evidence that his activity ever endangered people or property.

The trial court's finding that "[t]he defendant has chased a neighbor around with a large knife" is not supported by substantial evidence.[10] The court's finding was based solely on the prosecutor's summary of the notes of an unidentified member of the prosecution team, which reflected that Cooper told the

---

[9] The evidence of Cooper's financial damages does not support the trial court's finding that Jeong is likely to commit a super strike. Cooper's lost wages did not result from violence.

[10] In the opening brief Jeong argues that if this incident or others included in the prosecutor's summary of the notes had occurred, there would have been police involvement. The People argue that this "evidentiary claim" is forfeited because Jeong did not make it in the trial court. In the reply, Jeong responds that he did not forfeit the argument that there was insufficient evidence for the trial court's finding that he was violent. We do not rely on a lack of evidence of police involvement as evidence of the non-occurrence of any incidents, so whether that evidentiary claim was forfeited is irrelevant. The People do not argue that Jeong forfeited his argument that there was insufficient evidence to support the trial court's finding that he was violent, so we need not address forfeiture in that regard, either.

23

note-taker that a neighbor told Cooper that Jeong chased the neighbor with a large knife. The prosecutor did not tell the court who took the notes or when they were taken. The summary of the notes did not include when the alleged incident occurred or provide any details of the circumstances. The prosecutor did not disclose to the court that he did not read the notes verbatim, and the court did not have a copy of the notes to verify the completeness of the prosecutor's summary. Section 1001.36, subdivision (e) provides that the hearing on a defendant's eligibility and suitability "shall be informal and may proceed on offers of proof, reliable hearsay, and argument of counsel." " 'In general, the court will find hearsay evidence trustworthy when there are sufficient "indicia of reliability." ' [Citation.] The court, however, may not rely on unsubstantiated or unreliable evidence." (*People v. Buell* (2017) 16 Cal.App.5th 682, 689 [holding "[h]earsay that bears a substantial guarantee of trustworthiness is admissible in probation revocation proceedings"].) "The determination whether hearsay evidence is trustworthy rests with the trial court and will not be disturbed on appeal absent an abuse of discretion." (*Ibid*.) Here, the prosecutor's verbal summary of the notes was the product of three levels of hearsay, and defense counsel objected on this basis. The summary of Cooper's statements was not sufficiently substantiated for the trial court to deem it reliable.

The court found compelling that when Jeong committed the current offenses, he was on misdemeanor probation for violating the 2020 protective order relating to Peter, and that the restraining order violation was on bench warrant status in 2021. The court found that it was unlikely Jeong would comply with his legal obligations if released for treatment.

Under the circumstances, we cannot agree with the court's rationale. Jeong agreed to comply with treatment, and Dr. Walker reported that Jeong was motivated to receive treatment and was able to learn from his mistakes. The record is rife with evidence that Jeong's mental health problems have contributed to the current offenses, Jeong's past misdemeanors, and Jeong's failure to comply with court orders. There is no evidence that Jeong has ever been treated for schizophrenia or substance abuse or that he has been ordered to participate in treatment and has failed to do so. There is also no reason to believe that Jeong will commit a super strike if he does not complete treatment. Moreover, the Legislature has put in place procedures to address Jeong's failure to comply. Pursuant to section 1001.36, subdivision (g), proceedings may be reinstated if Jeong fails to participate or if his participation is unsatisfactory.

Lastly, we observe that the trial court released Jeong into the community under a plea agreement six weeks after the court denied his mental health diversion motion. If there was an unreasonable risk that Jeong would commit murder, it would make no sense to release Jeong on probation with credit for time served. Jeong faced a prison term of up to six years based on the charges against him. The court earlier noted a concern that Jeong would satisfactorily complete his treatment, relapse, and commit a felony. While we understand the court's apprehension that Jeong's treatment could fail in the long term and that Jeong might then commit a felony that did not carry a lengthy sentence, where there is not a likelihood that a defendant will commit a super strike the Legislature has prioritized affording the defendant the opportunity to receive mental health treatment

and the possibility for reform over punishment, and the courts must honor the Legislature's choice.

For all of the above reasons, we conclude that there is insufficient evidence that there is a likelihood that Jeong would commit a super strike and thus pose an unreasonable risk to public safety. To the extent that the trial court's denial of mental health diversion relied upon this reasoning, it was an abuse of discretion.[11]

## 2.    Adequacy of Mental Health Treatment Plan

We also reject the People's argument that the court properly denied Jeong's mental health diversion motion because the proposed treatment program was inadequate to meet Jeong's needs. As defense counsel pointed out in the trial court, the adequacy of Jeong's proposed treatment program is a separate question from his eligibility and suitability for mental health diversion. (*Sarmiento, supra,* 98 Cal.App.5th at p. 892.) Whether a treatment program meets a defendant's needs is a question that the court evaluates at the outset of diversion and

---

[11] Jeong puts forth alternative arguments in the event that we view the trial court's public safety findings to be an exercise of the court's residual discretion. We do not view the trial court as having exercised its residual discretion, as it specifically cited to the unreasonable risk to public safety factor throughout its discussion. Regardless, we agree with Jeong that "[i]n the guise of exercising its 'residual' discretion, a court is not permitted to redefine public safety in a manner inconsistent with the Legislature's expressed intent." (*Gomez v. Superior Court* (2025) 113 Cal.App.5th 671, 691, quoting *Sarmiento, supra,* 98 Cal.App.5th at p. 896.)

throughout the diversion period.  (*Ibid*.)  Here, the trial court did not reach the issue.  On remand, the trial court is directed to assess the adequacy of defendant's proposed treatment plan and to require modifications if necessary.


## DISPOSITION


We reverse the judgment and remand the cause for further proceedings consistent with this opinion.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS




MOOR, J.

We concur:


BAKER, Acting P. J.


KIM (D.), J.